[No. 10,687.—In Bank.]
Feb. 10, 1882.

## THE PEOPLE *v.* AH LEE ET AL.

MURDER—INSTRUCTIONS—PLEA OF "NOT GUILTY"—ISSUES.—The Court
in its charge to the jury among other things said: "The evidence in this
case upon the point whether the defendants or either of them are the
persons who committed the offense with which they are charged, is con-
flicting. The defendants, by their plea of not guilty, have rested their
defense upon the *sole ground* that they nor either of them are the persons
who committed the offense of which they stand charged. It follows
from this statement of the case, if you find from the evidence beyond a
reasonable doubt that they are the persons who killed or aided and
assisted in the killing of the deceased at the time, and in the manner
charged in the information, then *you must find the defendants guilty of
murder of the first degree*, as there are no circumstances in the case to
reduce the offense below that degree." *Held*: This instruction is clearly
erroneous.

ID.—RES GESTÆ.—(Sharpstein and Thornton, JJ.) On the trial the District
Attorney over the objection of defendant was permitted to ask the wit-
ness the following question: "Have you told all that you heard either
of the parties (the deceased or defendants) say at the time of the stab-
bing or *immediately after?* "

*Held*: Where declarations offered in evidence are merely narrative of a
past occurrence, they can not be received as proof of the existence of
such occurrence.

APPEAL from a judgment of conviction and from an order
denying a new trial in the Superior Court of Butte County.
HUNDLEY, J.

*Lyman I. Mowry*, for Appellant.

*W. A. Nygh* and *A. L. Hart*, Attorney General, for Re-
spondent.

SHARPSTEIN, J.:

The Court in its charge to the jury among other things
said:

"The evidence in this case upon the point, whether the de-
fendants or either of them are the persons who committed the
offense with which they are charged, is conflicting. The de-
fendants, by their plea of not guilty, have rested their de-
fense upon the *sole ground* that they nor either of them are

the persons who committed the offense of which they stand charged. It follows from this statement of the case, if you find from the evidence beyond a reasonable doubt that they are the persons who killed or aided and assisted in the killing of the deceased at the time, and in the manner charged in the information, then *you must find the defendants guilty of murder of the first degree*, as there are no circumstances in the case to reduce the offense below that degree."

It seems to us that this instruction is clearly erroneous. In the first place the defendants did not by their plea of "not guilty" necessarily rest their defense upon the sole ground that they nor either of them were the persons who committed the offense charged in the information. "The plea of not guilty puts in issue every material allegation of the indictment or information." (Pen. C., § 1019.) And all matters of fact tending to establish a defense, except a former acquittal, or conviction, or once in jeopardy, may be proved under a plea of the general issue. (Id., §§ 1016 and 1020.) And why it should follow from the statement of the case, as made by the Court, that if the jury found that the defendants killed or aided and assisted in killing the deceased, it must "find the defendants guilty of murder of the first degree, as there were no circumstances in the case to reduce the offense below that degree," is to us incomprehensible. And we think it to be well settled in this State that it was error to instruct the jury that there were no circumstances in the case to reduce the offense below that of murder of the first degree. The question whether the killing was perpetrated with the deliberation and premeditation necessary to constitute it murder in the first degree, was one which it was "peculiarly the province of the jury to determine." (*People* v. *Valencia,* 43 Cal. 552; *People* v. *Woody,* 45 Id. 289; *People* v. *Gibson,* 17 Id. 283.)

On the trial, the District Attorney put the following question to the witness Ah Hung: "Have you told all that you heard either of the parties (the deceased or defendants) say at the time of the stabbing or *immediately after?*" The question was objected to by the defendants' counsel on the ground, among others, "that 'immediately after' is a very obscure phrase and may not bring whatever was said by the deceased within the rule of *res gestæ,* and therefore it is incom-

petent." The objection was overruled and defendants excepted. Before the witness answered, the District Attorney said to him: "At the time Lum Yen was running away—right there at the time—tell me everything that was said." The witness then said: "Lum Yen ran down to the store after he was cut, he hallooed murder and ran down to the store. I went down and deceased told me, 'If I die, you look after those men, Ah Toon, Ah You, and Ung Oon. If I do not die you need not attend to it at all.'"

Then the District Attorney asked the following questions, to which the witness gave the following answers:

"Q. While Lum Yen was running down there did he not cry murder, and say that these parties had stabbed him or killed him?

"A. Yes.

"Q. While he was running down?

"A. Yes.

"Q. *And immediately after too?*

"A. Yes."

At this point the attorney for the defendants said: "We object on the ground that the witness has testified and given the names of parties, and the District Attorney then turns around and asks him if it was not these parties, pointing to the defendants." The objection was overruled and the defendants excepted.

If we were to assume that the questions as to what the deceased said immediately after he was stabbed were objectionable, it is not quite clear that the exception could be maintained. After the objection to the first question containing the words objected to had been overruled, and before the witness answered, the District Attorney put another question in which those words were omitted. But the witness in his answer stated what was said by the deceased some time after he was stabbed. So far as the answer was not responsive to the question, the defendants upon motion would have been entitled to have it stricken out. But no such motion was made. And the objection to the last question is not based upon the ground that it called for a statement of what the deceased said after the termination of the act

with which the defendants were charged, and therefore not a part of the res gestæ.

But we shall discuss the question of the admissibility of the statement of this witness as to what the deceased said after he reached his store, as if the objection to its introduction and the exceptions to the rulings of the court in admitting it had brought the question fairly before us. We deem this course advisable because the case will have to go back for a new trial. What the deceased said at any time when the defendants were not present was not admissible in evidence against them, unless shown to be a part of the res gestæ, or dying declarations of the deceased. It is not claimed that any statements made by the deceased were admissible as his dying declarations, but it is claimed that those made immediately after the stabbing were admissible as a part of the res gestæ.

There are cases which hold that declarations made by the party injured, as to the cause and manner of the injury which terminated in his death, are admissible in evidence against the person charged with the homicide, although made after all action on the part of the wrong-doer, actual or constructive, had ceased. (Commonwealth v. McPike, 3 Cush. 181; People v. Vernon, 35 Cal. 49.)

In the former case it was held that the declarations of a person, who was wounded and bleeding, that the defendant had stabbed her, made immediately after the occurrence, though with such an interval of time as to allow her to go from her own room up stairs into another room, was admissible in evidence, after her death, as a part of the res gestæ. In the latter case the evidence of the declarations was held to be admissible on the ground that they were made within three fourths of a minute after the first shot was fired, which was immediately succeeded by three other shots. In both of these cases the admissibility of the evidence of such declarations is made to depend upon the length of time which elapsed between the inflicting of the fatal wound and the making of the statement. If that be the criterion, it is quite evident that the requisite length of intervening time will vary as it did in the cases above cited; and in the admis-

sion of testimony of this character much would have to be
left to the exercise of the sound discretion of the Judge at
the trial.

There are two English cases (*Thompson* v. *Trevanion*, Skin.
402, and *Rex* v. *Foster*, 6 Car. & P. 325), which sustain the doc-
trine of *Commonwealth* v. *McPike* and *People* v. *Vernon, su-
pra*. Of the two English cases Mr. Roscoe says: "These
two cases are difficult to reconcile with established principles.
It is to be observed that both extend to the particulars of
what was said, and though they were both made in close
proximity to the event to which they profess to relate, it
seems very questionable indeed whether that ground alone,
as is presumed by Lord Holt, is sufficient to render them ad-
missible. In *R.* v. *Foster*, there was the additional circum-
stance that the person who made the statement was dead;
but it seems to require much consideration whether, as a gen-
eral rule, the statements of a deceased person as to the cir-
cumstances of the injury which caused his death, made *im-
mediately after* the injury, but not under circumstances which
entitle them to be considered as dying declarations, are re-
ceivable in evidence." (Roscoe's Cr. Ev. 261.) In *R.* v. *Bed-
ingfield*, tried in 1879, the prosecution offered to prove that
the deceased, some ten or fifteen minutes before her death,
coming from her house, at a distance of fifteen or twenty
yards from her door, holding her apron to her throat, ex-
claimed: "Oh, dear aunt, see what Bedingfield has done,"
Bedingfield not being present at the time. Cockburn, C. J.,
with the concurrence of Field and Manistry, JJ., held that
the evidence was inadmissible.

To a criticism upon this ruling, the Chief Justice replied
in a pamphlet, in which, among other things, he said:

"What, then, are these limits, and where, looking to the
law as it exists, are we to draw the line? In other words,
what is the meaning of the term *res gestæ* as applied to a
criminal case? To this I should propose to answer thus:

"Whatever act or series of acts constitute, or in point of
time immediately accompany and terminate in the principal
act charged as an offense against the accused, from its incep-
tion to its consummation or final completion, or its prevention
or abandonment, whether on the part of the agent or wrong-

doer in order to its performance, or on that of the patient or party wronged in order to its prevention, and whatever may be said by either of the parties during the continuance of the transaction, with reference to it, including herein what may be said by the suffering party, though in the absence of the accused during the continuance of the action of the latter, actual or constructive, *e. g.,* in the case of flight or applications for assistance, form part of the principal transaction, and may be given in evidence as part of the *res gestæ* or particulars of it; while, on the other hand, statements made by the complaining party, after all action on the part of the wrong-doer, actual or constructive, has ceased, through the completion of the principal act or other determination of it by its prevention, or its abandonment by the wrong-doer, such as, *e. g., statements made with a view to the apprehension of the offender, do not form part of the res gestæ, and should be excluded.*

" Whatever, whether acts or words, forms part and parcel of the fact which is the subject of the judicial inquiry, presents no difficulty. Words uttered during the continuance of the main action, whether by the active or the passive party, though they can not amount to acts for which the accused can be held responsible, yet may so qualify or explain the act or acts they accompany, that they become essential to the due appreciation of them. There is every reason, therefore, for considering words so spoken during the doing of an act charged as the offense, as part and parcel of the act itself. Moreover, words so spoken are generally admissible on another ground, clearly not open to exception, namely, that they are uttered in the presence and hearing of the accused. But even where the accused is no longer present, if the words are the immediate and natural effect and consequence of continuing action on his part, though uttered out of his hearing, they may well be considered as part of the transaction. Thus, to illustrate what I mean by a case not unlikely to occur: If a party assailed should succeed in escaping from the immediate attack and presence of his assailant, and should, while apprehending immediate danger, make a declaration in his flight with a view to obtaining assistance, such a declaration would be admissible, but not so if the declara-

tion were made after all pursuit or danger had ceased. Or, to take another not unlikely case: A man is awaked in the night by hearing sounds as of some one breaking in at the back of his premises. He hastens to a back window and sees a man whom he knows endeavoring to break in. He rushes to a front window opening to the street, and calls to a passer-by or to a neighbor for assistance, stating who it is that is breaking in. Or a man finds himself waylaid by another who makes a murderous assault on him; whereupon, succeeding in making his escape, he flies, and, outrunning his assailant, applies to the first person he meets for protection, stating what has happened, and who it is that has assailed him, and from whom he apprehends danger. In either of such cases, I should have no hesitation in holding the statement to be properly part of the *res gestæ*. The statement is the immediate effect of the continuing, at all events constructively continuing, act of the wrong-doer. But if, in either of these cases, on the alarm being given, the wrong-doer were to desist and take to flight, statements subsequently made by the injured party to third persons would, I think, stand on an entirely different footing." (Whart. Crim. Ev., § 263, note.) He reviewed *Rex* v. *Foster* and *Commonwealth* v. *McPike, supra*, and dissented from the views therein expressed, upon this point.

It is perfectly obvious that there is a limit to the time within which such statements must be made in order to be admissible in evidence as a part of the *res gestæ*. But if made after the termination of the act to which they refer, they are merely narrative of a past transaction, whether made within a minute or an hour afterward. And " where declarations offered in evidence are merely narrative of a past occurrence, they can not be received as proof of the existence of such occurrence." (1 Greenl. Ev. 110.) "An act can not be varied, qualified, or explained either by a declaration which amounts to no more than a mere narrative of a past occurrence, or by an isolated conversation held, or an isolated act done, at a later period." (1 Taylor's Ev. 53.)

In the case now before us, it does not appear that anything occurred between the defendants and the deceased after the stabbing, and yet the prosecution was permitted to ask the

witness what he heard "either of the parties say at the time of the stabbing or *immediately after*." In response to it the witness might have stated what was said by the injured party after the assailants had fled, and he himself had reached a place of safety. And such appears to have been the construction which the witness, Court, and counsel placed upon the question. The statement to which the witness testified related to an act which had been completed, and the statement was clearly "made with a view to the apprehension of the offenders."

If evidence of such statements is admissible, the rule which requires that declarations made by an injured party at any time after the infliction of the injury, must be made under a belief of impending death, in order to be admissible in evidence, should be abrogated. The distinction between statements which constitute a part of the *res gestæ* and those which constitute "dying declarations" should be clearly defined or obliterated. But we think that the line which separates statements which are admissible in evidence as a part of the *res gestæ* from those which are admissible only as dying declarations, is well defined by Mr. Chief Justice Cockburn.

Judgment and order reversed, and case remanded for a new trial.

THORNTON, J., concurred.

McKINSTRY and ROSS, JJ., concurred in the judgment on the ground first stated in the opinion of Mr. Justice Sharpstein.

MORRISON, C. J., concurred in the judgment of reversal.

MYRICK, J., dissented.