[S. F. No. 12979.   In Bank.—July 13, 1929.]

EMMA L. HUNTLY, Respondent, v. UNITED STATES FIDELITY & GUARANTY COMPANY (a Corporation), Appellant.

H. W. B. Smith and Ford, Johnson & Bourquin for Appellant.

Raymond Perry for Respondent.

RICHARDS, J.—This appeal is from a judgment in the plaintiff's favor for the sum of seven thousand five hundred dollars, for which she sought recovery as the beneficiary named in an accident insurance policy issued by the defendant, United States Fidelity & Guaranty Company, to her husband, which policy was dated January 5, 1918, and provided for an indemnity in the amount sued for, payable to plaintiff in the event of the death of the insured "resulting

directly, and independently of all other causes, from accidental and bodily injury.'' The deceased husband of the plaintiff thus insured under said policy was at and for some time prior to the time of his death an auditor in the employ of the Pacific Steamship Company, stationed at berth 160, Wilmington, California. On March 22, 1926, about 7:45 o'clock A. M., the deceased was found in a kneeling position with his head against a checker's desk just beside the door of berth 160 above referred to. There were no witnesses to his fall, but when he was discovered some fifteen or twenty minutes later he was still living, though in a semi-conscious condition, and was feebly but vainly attempting to rise. His head at the base of his forehead was resting upon the edge of the checker's bench when he was found and he appeared to have sustained a deep wound at the point of contact where the frontal bone of the skull joins the nasal bone, and which wound had apparently been caused by his violent fall against the edge of such bench a short while before he was found. He had also an abrasion across his nose, his right knee was skinned, and there were scratches upon the back of his right hand. Within some thirty minutes after he was discovered in his above-described condition he died. The foregoing facts, and certain others to be adverted to, were presented by the plaintiff in evidence at the trial. The defendant in its pleadings and in the evidence educed in support thereof at the trial attempted to show that the decedent prior to his aforesaid· injuries had been afflicted with a pronounced and well-defined condition known as ''angina pectoris'' and that the arteries of the deceased upon the postmortem examination showed an advanced condition of calcification known as ''arterio sclerosis.'' The defendant also introduced certain evidence showing that the deceased, within the period of a week or so prior to his final and fatal injuries, had, upon two occasions, been found lying on the streets of Wilmington in an unconscious condition and had been given emergency treatment for what was diagnosed at the time as apoplexy or heart trouble, and that for some period prior to these attacks he had been receiving treatment from a physician for symptoms indicating the existence of heart trouble. Predicated upon this evidence and upon what the autopsies had disclosed, the defendant presented evidence of certain expert physicians who testified

that in their opinion the deceased's death had been caused by a sudden recurrence of unconsciousness resulting from his diseased condition and from the effect of which he had died, rather than from any effect produced by his facial or other injuries. At the conclusion of the evidence the defendant moved for a nonsuit, which motion the trial court denied; whereupon defendant submitted certain instructions which practically amounted to instructions for a directed verdict, and which were based upon the ground urged upon motion for nonsuit, which was, in substance, that the uncontradicted evidence in the case disclosed that the cause of decedent's death was that of his previous diseased condition and was not the result of such accidental bodily injuries as are covered and required to exist by the terms of the policy as a condition of recovery thereunder. The court refused these requested instructions. The jury returned a verdict in favor of the plaintiff for the amount stated in the policy and for which sum the trial court entered judgment upon denying the defendant's motion for a new trial.

The appellant demands a reversal of the judgment upon two grounds: First, upon that presented upon motion for nonsuit and urged in the instructions which the court refused to give; second, upon the ground that the trial court erred in such refusal, and also committed error in the giving of certain instructions requested by plaintiff. ▉ We are unable to agree with the appellant's contention that the judgment should be reversed upon the first of the foregoing grounds, since in our opinion there does not exist in this record certain other substantial evidence which would suffice to sustain the verdict of the jury. It is true that the deceased husband of this plaintiff was found by the diagnoses after his death to be afflicted with the physical conditions defined as angina pectoris and arterio sclerosis. It is also true that as a probable result of his aforesaid condition he had, within a short while before the fall which immediately preceded his demise, the two fainting spells upon the streets of Wilmington which the evidence disclosed. But the evidence also discloses that notwithstanding these ailments and the occurrence of these fainting spells the decedent was otherwise in a fairly rugged physical condition; that he was regularly performing his work and exhibiting no impairment of physical ability so to do, and that even on the occasion of

his fainting spells he was, after a few hours of rest, back at his accustomed place in the office of his employer. There is also the evidence of the witness Williams, who saw him coming down the street a moment or two before his fall, and who apparently noticed nothing unusual in his physical condition. This witness further testified to the fact that he was employed by the Nelson Steamship Company in Wilmington at berth 160 on the day of the decedent's injuries and death; that immediately in front of the door which the decedent was presently to enter there was a metal plate four feet square and about a quarter of an inch thick, which was laid upon the platform of the dock and which the stevedores used to run their heavy trucks over. This particular plate had become warped with use, and the witness Williams in passing struck his foot against the warped edge thereof, and it was while he was rubbing his injured foot that he saw Huntly come around the edge of the dock and start down the platform to the place where he was to cross the same plate in order to enter the door just beside which stood the checker's bench against which he made his headlong fall and from the contact with which he received his facial injury. The plaintiff insists that it is a fairly deducible inference that her deceased husband had also tripped upon the edge of this warped metal plate and had thereby been caused to fall in the position in which he was found a few moments later. The evidence with respect to the position in which the deceased was thus found a few moments later would seem to support that inference and would seem to negative the inference which the defendant seeks to have drawn from the existence of his diseased condition, that he had fallen as the result of a sudden fainting spell, which upon this occasion proved to be fatal. The evidence which the plaintiff produced in opposition to this latter inference, in the form of expert opinion, and also in the form presented by accredited medical treatises, was to the effect that a person suddenly collapsing as the result of an attack of heart failure indicated that under such circumstances the·person thus afflicted would fall and be found lying flat upon his back, as in fact the deceased upon his two former fainting spells was found to be lying, and that a person thus suddenly overcome would not be found in the position upon his hands and knees in which the deceased was when discovered, and

that a person suffering a fainting spell from heart failure would not have made the forward plunge which the deceased must have made in order to strike his head against the edge of the checker's bench with sufficient force to have caused his death, and which in the opinion of the plaintiff's medical expert, Doctor Sweeney, did cause, and in fact was the sole cause of, the death of the decedent. The plaintiff further introduced certain photographs purporting to give the relative position and condition of the metal plate upon which she insisted that her husband must have tripped and fallen, and of the checker's bench against which he was obviously impacted in his fall. These tend quite strongly to support the plaintiff's theory as to the sole and immediate cause of her husband's death. In the foregoing state of the evidence we are unable to say that there was not substantial and sufficient evidence before the jury to support the plaintiff's claim as to the cause of her husband's death and to sustain the verdict of the jury based thereon. It is of some significance in this connection that the defendant presented not only a motion for nonsuit based upon the proposition which it here urges as the first ground of its appeal, but also presented to the trial court a motion for a new trial based upon the same ground, and that both of these motions the trial court, who had heard all of the evidence in the case, including the testimony of the opinion witnesses, denied. We therefore conclude that there is no merit in the appellant's first contention.

As to the appellant's second contention to the effect that the trial court erred in refusing to give certain of its requested instructions and also committed error in the giving of certain instructions which the plaintiff requested, it will suffice to say that as to the refused instructions, these were predicated upon the defendant's theory as to the uncontradicted state of the evidence, and that since we have declined to adopt such theory we must uphold the decision of the trial judge who, for the same reason, refused to give said instructions. With respect to the instructions which the trial court gave at the request of plaintiff, we have examined these in the light of the entire body of instructions which were given to the jury, and we find that as to the instructions to which appellant offers particular objection these were, in the main, taken from cases which have received the

approval of this court, and as to the instructions in general we have found them to be full and fair and, taken as a whole, not subject to the appellant's criticism.

It follows from these conclusions that the judgment should be, and the same is hereby, affirmed.

Shenk, J., Seawell, J., Langdon, J., Curtis, J., Preston, J., and Waste, C. J., concurred.