[Civ. No. 572. Fourth Appellate District.—January 8, 1932.]

IDA LOSLEBEN, Appellant, v. CALIFORNIA STATE LIFE INSURANCE COMPANY (a Corporation), Respondent.

William J. M. Heinz and McFadden & Holden for Appellant.

West & McKinney, L. A. West and B. Z. McKinney for Respondent.

BARNARD, P. J.—The plaintiff is the widow of George Phillip Losleben, who held an insurance policy issued by the defendant. This policy provided for the payment of $2,500 in the event of death resulting from natural causes and for an additional $2,500 "in the event that the death of the insured is caused by bodily injuries effected exclusively and wholly by external, violent and accidental means, said death occurring within ninety days after the happening of such accident". The insured was employed as a mechanic in a packing-house and on November 21, 1929, was directed by his employer to build a shelf over a work-bench, which bench was about three feet high. The employer left the building about 3 o'clock on the afternoon of that day, leaving the insured engaged in this work. When the employer returned about two hours later he found the insured in great pain and sent him home. Doctors were immediately called, an operation was performed and on November 25, 1929, the insured died. The defendant paid the $2,500 contemplated by the policy for death from a natural cause, but refused to pay the additional $2,500. This action followed and at the close of plaintiff's evidence the court granted a motion for a nonsuit. From the ensuing judgment this appeal is taken.

The first point raised by appellant is that the court erred in refusing to permit the employer to testify as to certain statements relative to what had occurred, made to him by the insured when he returned to the packing-house and found him suffering, and also in refusing to permit

similar testimony by the plaintiff as to statements made to her by her husband upon his return home. It is urged that these statements were admissible as a part of the *res gestae*. The employer had testified that when he returned to the premises he observed that part of the work of putting up the shelving had been done, but that the work had not been completed; that the insured was not then engaged in the work; and that, as he entered, the insured came out of a little storeroom adjoining the office and stood in a "doubled up" position. There is no evidence that anyone else was in the building during the time the employer was gone.

In *Heckle* v. *Southern Pac. Co.*, 123 Cal. 441 [56 Pac. 56, 57], the court said:

"There is no great difficulty in stating the general principles which prevail in determining whether in a given case certain declarations or acts are part of the *res gestae*. A declaration, to be admissible on that ground, must be an undesigned part, or incident, of the occurrence in question. It must be, in a general sense, contemporaneous with the main occurrence, although, in case of a sudden accident or attack, the declaration would not be inadmissible merely because the blow or collision immediately preceded it; it must be the natural and spontaneous outgrowth of the main occurrence, and must exclude the notion of deliberation or calculation, or the design to manufacture evidence for future purposes; and, if it be a mere narrative of past events, it then is clearly within the category of inadmissible hearsay, and must, beyond doubt, be excluded."

In *Williams* v. *Southern Pac. Co.*, 133 Cal. 550 [65 Pac. 1100, 1102], the court said:

"The ruling admitting these declarations was clearly erroneous. It is contended that they were part of the *res gestae* . . . Statements are like other circumstances when they are part of it, and if the whole affair cannot be rightly understood without them, they are competent. Expressions of persons who are actors, made during the occurrence, may generally, but not always, be proved. If spontaneous, and caused by the event, they may nearly always be shown. But if, afterwards, no matter how shortly afterwards, there is an attempt to explain what has happened, or to account for it, or to defend one's self, or the like, it is incompetent,

and inadmissible as *res gestae.* A narrative, even if given during the occurrence, is inadmissible.''

In *Murphy* v. *Board of Police etc. Commrs.*, 2 Cal. App. 468 [83 Pac. 577], the court used the following language:

''The witness was then asked to state what Murphy said to him at that time as to what was the matter with him. The question was objected to upon the ground that it was hearsay and no part of the *res gestae,* and the court sustained the objection. The ruling was not erroneous. The evidence sought to be elicited was purely hearsay. It could not, under well-settled principles of evidence, be binding upon defendant. If Murphy had received injuries from the men who were seen running away it would seem that plaintiff could have proven it without the evidence of Murphy's statement of a transaction that had ended and been completed. Murphy was not under oath. The defendant was not present. The statement was made, if made at all, after Murphy had been injured, if he had been injured.''

Appellant's cause of action is based upon the theory that her husband received internal injuries as the result of falling from or jumping from the bench upon which he was working. It appears from the evidence that he had left the scene of his work and had gone into an adjoining room from which he emerged when his employer returned. While the appellant was not permitted by the trial court to bring out in evidence statements made by the insured as to what time he claimed to have been injured, the time element is not controlling and even if the statements sought to be introduced in evidence were made to the employer within a few minutes after the injury occurred, that fact in itself does not make such statement admissible as a part of the *res gestae.* (*Coryell* v. *Clifford F. Reid, Inc.,* 117 Cal. App. 534 [4 Pac. (2d) 295].) Under the authorities prevailing in this state, we feel compelled to hold that the court correctly refused to admit evidence of these statements by the deceased (see, also, *People* v. *Ah Lee,* 60 Cal. 85; *Lissak* v. *Crocker Estate Co.,* 119 Cal. 442 [51 Pac. 688]; *People* v. *Wong Ark,* 96 Cal. 125 [30 Pac. 1115]; *Boone* v. *Oakland Transit Co.,* 139 Cal. 490 [73 Pac. 243]).

■ It is next urged that the court erred in refusing to permit a physician who attended the insured to testify as to statements made to him by the insured as to what caused his

injury. It is particularly urged that these statements were necessary and useful to the physician in enabling him to diagnose the trouble and treat the patient. The physician was allowed to testify as to what the patient told him in regard to his condition, in regard to the results of his examination of the patient, and in regard to what was found during an operation that followed. Objections were sustained, however, to questions attempting to bring out what the patient stated to the physician in relation to what had caused the existing condition. In our opinion these rulings of the court were correct. It does not appear that these statements were necessary to enable the physician to determine the condition of the insured, and it does appear that the nature of his trouble was determined by the physician from his objective examination of the patient. The condition of the patient being known to the physician, the insured's statement as to what had caused the condition was none the less hearsay because of having been made to a physician (*Turner* v. *Turner*, 187 Cal. 632 [203 Pac. 109]). In *Jenkin* v. *Pacific Mutual Life Ins. Co.*, 131 Cal. 121 [63 Pac. 180, 181], the court said:

"The manner in which the wound was inflicted does not appear from the evidence, except as it may be inferred from the nature and location of said wound. No person is shown to have been present with the insured at the time he received the mortal injury; and his statements to the physician and others as to how he came to be wounded were, properly we think, stricken out by the court on motion of defendant."

In 22 Corpus Juris, at page 268, the rule is thus stated:

"Narrative statements to a physician are to be rejected where they relate to facts not connected with diagnosis and treatment, such as the cause of an illness or injury, the circumstances under which an injury was received, or the instrument with which it was inflicted, or past sufferings of the patient."

Appellant next contends that the court erred in granting a motion for a nonsuit, it being insisted that irrespective of the fact that the various witnesses were not permitted to testify as to statements made by the deceased as to how the injury occurred, there still remained sufficient evidence to make out a *prima facie* case. We think this contention must be sustained. The deceased had been working in

this packing-house for about ten years. His employer testified that when he left him on the afternoon in question he appeared to be in perfectly good health and was whistling at his work; that in doing his work it was necessary for him to climb upon this bench, and in getting down to jump from the same; that when he returned he found the deceased suffering extreme pain and "doubled up"; that he sent him home and shortly thereafter went over to see him; that at that time the insured could not stand up straight; and that when he was put to bed he "drew himself up". The physician who was immediately called testified that he examined the insured and found his abdomen very much distended and very painful to the touch; that from his examination of the patient he could determine how the injury was caused within a certain range of possibilities; and that on the same day, November 21st, he performed an operation. As to what he found, he testified as follows: "I found a condition of peritonitis of the abdominal cavity; fluid in the abdomen, and fecal matter; I found a perforation of the small intestine in the center, or twist of the bowel, what we call a volvulus,—that is the technical name for a twist of that character. The circulation had been cut off by this twist and that segment of the bowel was blue and black, colored in the process of decay."

This physician testified that in his opinion this condition was caused by an injury. Another physician testified that he saw the insured on November 21st, that the insured told him that the pain in his abdomen came on acutely that afternoon, compelling him to quit work, and that he almost collapsed; that when he saw the patient he was in such pain he could not say very much; that he held his stomach and complained of the terrible pain; and that he was lying down and rolling in pain. This physician testified that in his opinion the death of the decedent was caused by acute peritonitis, which was brought on by "the volvulus or twist of the bowel", and that this condition of the patient could be caused by "a sudden jolt, or a strain of the bowel wall, probably a sudden jerk or jump". Asked as to what kind of a condition volvulus is, he replied: "It is a twist in the bowel, usually occurring in the small bowel, and as soon as that takes place you have your circulation cut off in

the bowel adjoining, and that bowel immediately becomes weakened, the blood supply is shut off, and, of course, immediately we have gas accumulate because the bowel is obstructed and the gas accumulates in all the bowel, and the weakened condition in the bowel which had been deprived of the circulation is liable to burst or perforate.''

He then testified that this patient had a volvulus and a perforation of the bowel, and that this could be caused either by chronic constipation, by tuberculosis or by a sudden jolt or strain. He then testified that he found no indications that this patient suffered from the ailments referred to, and that his bowel and all of his abdominal organs were in a healthy condition. Based upon the conditions he found, he testified that in his opinion this particular volvulus was caused by a strain.

In *Jenkin* v. *Pacific Mutual Life Ins. Co., supra,* the court said: ''The burden is undoubtedly on the plaintiff by the very terms of the contract to show that the wound was inflicted accidentally, but it is not necessary, for him to make out his case, that he should produce the direct testimony of eye-witnesses. If the circumstances placed in evidence, and the inferences to be drawn therefrom, and the presumptions arising thereon, point clearly to an accidental injury, the plaintiff has made out a *prima facie* case and is entitled to a finding in his favor.''

In our opinion, this evidence of a man in normal health suddenly stricken, with the evidence that the condition in which he was found could have been caused by a jolt or sudden strain, taken in connection with the place and circumstances in which he was working, with the absence of the only things that could be expected to have caused his condition, and with the natural inferences and presumptions that may be drawn from the evidence introduced, was sufficient to make out a *prima facie* case, and that the motion for a nonsuit should have been denied. Nor is the result different because the deceased may have been injured while doing something he intended to do, such as jumping from the bench. While he may have intended to jump from the bench, he may have slipped and fallen while so doing, and it can hardly be presumed that such slipping or falling was an intentional act. (*Davilla* v. *Liberty Life Ins. Co.,* 114 Cal. App. 398 [299 Pac. 831].)

We think a question of fact was presented which should have been passed upon by the jury.

For the reasons given, the judgment is reversed.

Marks, J., and Jennings, J., concurred.