[Civ. No. 5910.  Third Appellate District.—July 1, 1938.]

WILLIAM J. FRENZER, Respondent, v. MUTUAL BENEFIT HEALTH AND ACCIDENT ASSOCIATION (a Corporation), Appellant.

Gumpert & Mazzera and C. H. Hogan for Appellant.

Honey & Mayall for Respondent.

PULLEN, J.—This is an action to recover upon an accident policy issued by defendant herein. Judgment was in favor of plaintiff from which defendant prosecutes this appeal.

The principal grounds for reversal are the insufficiency of the evidence to establish an accident or accidental injury; the interpretation of the provisions in the policy requiring the accidental injury to be completely disabling from the date of the accident, and the meaning and effect of part K of the policy.

In 1923 the Mutual Benefit Health and Accident Association issued to Archie Zugar a policy of health and accident insurance, which provided for a death benefit in the event the assured should die from accidental means as defined in the policy. The policy was in full force and effect at the time of the death of Zugar, and the face value of such policy at the time of his death was $8,000.

For some two weeks next preceding the 12th day of March, 1936, the insured, Archie Zugar, and Albert Folsom were mining in Calaveras County. During this period Zugar was engaged principally in single hand drilling, wherein the drill was held in one hand and struck with a hammer in the other. Late in the afternoon of March 12, 1936, Zugar became violently ill and complained to his working companion, Mr. Folsom, that he was suffering from a very severe pain in the right hand. Mr. Folsom examined the hand of Mr. Zugar but could find no visible sign of any bruise, cut or other injury. He immediately took Mr. Zugar to his home, and on the following day Mr. Zugar went to the office of Dr. Linwood Dozier in Stockton, who examined the hand but found no external wounds but did observe evidence of a bruise. The hand was swollen and inflamed. The day following, Mr. Zugar was taken to a hospital where he was again attended by Dr. Dozier. A day or two later X-ray pictures were taken of the hand which revealed a small particle of foreign substance in the palm of the right hand, which the doctors stated, in their opinion, was a particle of steel. Some time thereafter the hand was amputated, but on April 21st, Mr. Zugar died, the cause of death being general septicaemia or blood poisoning.

A sister of Mr. Zugar was named as beneficiary in the policy, and after his death she assigned her claim and rights under the policy to the plaintiff herein.

The insuring clause of the policy of insurance and the provisions therein for accident and illness indemnities are as follows:

"MUTUAL BENEFIT HEALTH and ACCIDENT
ASSOCIATION
OMAHA
(Herein called Association)
DOES HEREBY INSURE

"*INSURING CLAUSE:* ARCHIE ZUGAR (Herein called the Insured) of City of Groveland, State of California, by occupation a master mechanic against loss of life, limb, sight, or time, resulting directly and independently of all other causes, from bodily injuries sustained through purely accidental means (suicide, sane or insane, is not covered), and against loss of time on account of disease contracted during the term of this policy, respectively, subject, however, to all the provisions and limitations hereinafter contained.

"ACCIDENT INDEMNITIES
SPECIFIC LOSSES ·

"PART A.

"If the insured shall, through accidental means, sustain bodily injuries as described in the Insuring Clause, which shall, independently and exclusively of disease and all other causes, immediately, continuously and wholly disable the Insured from the date of the accident and result in any of the following specific losses within thirteen weeks, the Association will pay in lieu of all other indemnity:

"For loss of Life................................$4,000.00

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

"ILLNESS INDEMNITIES
CONFINING ILLNESS FORTY-
EIGHT DOLLARS PER
WEEK FOR LIFE

"PART H.

"The Association will pay, for one day or more, at the rate of Forty-eight ($48.00) Dollars per week for disability resulting from disease, the cause of which originates more than thirty days after the date of this policy, and which confines the Insured continuously within doors and requires regular

visits therein by legally qualified physician; provided said disease necessitates total disability and total loss of time.

\* \* \* \* \* \* \* \* \* \* \* \*

## "NON-CONFINING ILLNESS TWENTY-FOUR DOLLARS PER WEEK

"PART I.

"The Association will pay for one day or more, at the rate of Twenty-four ($24.00) Dollars per week, but not exceeding five weeks, for disability resulting from disease, the cause of which originates more than thirty days after the date of this policy, and which does not confine the insured continuously within doors but requires regular medical attention; provided said disease necessitates total disability and total loss of time.

\* \* \* \* \* \* \* \* \* \* \* \*

"PART J.

## "COVERED AS SICKNESS

"PART K.

"All diseases are covered by this policy. Any accidental injury, fatal or otherwise, resulting in hernia, boils, carbuncles, felons, abscesses, ulcers, infection, septicaemia, ptomaine poisoning, cancer, diabetes, fits, peritonitis, apoplexy, sunstroke, freezing, hydrophobia, sprained or lame back, shall be paid as provided in Part H or I, anything to the contrary notwithstanding."

█ It is the contention of appellant that it devolved upon plaintiff to establish that Mr. Zugar died as the result of bodily injuries through accidental means. The trial court so found, and we are fully convinced that the court was justified from the evidence in so finding.

Mr. Folsom testified that he and Mr. Zugar were engaged in sinking a shaft using steel drills in connection with the work, and that as the drills were used they would in time crack and splinter. He also testified that while Mr. Zugar made no complaint of any injuries on the particular day in question, nevertheless they both, quite frequently, struck themselves on the hands with their hammers. He also testified he examined Mr. Zugar's hands when he complained of the pain, and while the hands did not show any evidence of a fresh wound, they were, on account of the work he had been doing, very calloused, cracked and rough.

Dr. Dozier, the attending physician, testified that Zugar was suffering from a type of infection known as septicaemia, which was first localized in the palm of the right hand and then spread by the blood stream to various parts of the body. When asked as to what, in his opinion, caused the septicaemia in Mr. Zugar's hand, he stated he believed it was caused by a blow or a direct injury which allowed organisms to get into the hand, from an external condition introducing germs from outside of the body into the hand. The doctor also stated that in examining the hand there was plenty of evidence of an accident without the use of X-ray, and although the skin was not apparently broken, there was evidence of a bruise. He also testified that the poisoning was not due to the piece of steel in the hand, but to the infective bacteria which the foreign body carried into the tissue. Such infection starts immediately, so the doctor testified, the rapidity with which it appears, depending upon the virulence of the organisms which are carried in, and the ability of the patient to resist that type of infection. Ordinarily within twelve hours from the time of entrance the infection will appear. The doctor also testified that when he saw the patient on the 13th of March, it was apparent that something had happened within the twenty-four hours immediately preceding the time he saw him. On cross-examination Dr. Dozier also stated that it only required a microscopic opening for the germs to enter, and that it was entirely possible a piece of steel as small as that located in Mr. Zugar's hand could carry infection with it and be projected with such force as to completely bury itself in the hand without leaving an open wound.

While it is true that it is necessary for plaintiff to establish an accident to recover under this policy, the accident may be proved by circumstantial evidence. (*Jenkin* v. *Pacific Mutual Life Ins. Co.*, 131 Cal. 121 [63 Pac. 180]; *Huntly* v. *United States F. & G. Co.*, 207 Cal. 551 [279 Pac. 425]; *Losleben* v. *California State Life Ins. Co.*, 119 Cal. App. 556 [6 Pac. (2d) 1012]; *Hirschberg* v. *Goodwin*, 113 Cal. App. 550 [298 Pac. 855].)

Appellant contends that Mr. Zugar made no complaint as to any injuries, and that such a small particle of steel could not have caused such an effect, but it is a matter of common experience that a thorn or pin scratch might not be sufficient to cause complaint or be visible to the eye, and yet be sufficient

to introduce the poison into the system from which death might later result. The fact, therefore, that there was no open wound or no particular complaint at the time of the injury was not particularly convincing. Mr. Zugar was a man engaged in rough, strenuous work and frequently injured and bruised his hands and, as testified by Mr. Folsom, was not inclined to complain of such every-day occurrences.

The fact that a foreign body such as a piece of steel was found in Mr. Zugar's hand shows of itself that an accident had been sustained, as pieces of metal do not get into one's hand except through external, violent and accidental means. In *Losleben* v. *California State Life Ins. Co.*, *supra*, the court held that evidence of the fact that the entry could have been caused by accidental means was sufficient to create an inference that an accident had occurred requiring the case to be submitted to the jury, and here, in addition to that we have the attending physician testifying directly that the injury to Mr. Zugar's hand must have been caused by some external force allowing the entry of the bacteria. In the case of *Carpenter* v. *Pacific Mutual Life Ins. Co.*, 145 Wash. 679 [261 Pac. 792], the decedent was a farmer and due to the nature of the physical work he performed about the farm his hands had small cuts and abrasions thereon. One day he skinned a sheep and the next day complained of pain in the arm, and within five days thereafter died of blood poisoning. It was the theory of the plaintiff that decedent was infected by bacteria entering through pre-existing cuts on the hands. The trial court gave judgment for defendant, which was reversed on appeal. The Appellate Court held that the fact that there was no evidence as to how or when the accidental injury was inflicted, was not fatal to the plaintiff's case since it was only necessary to show that death was caused by violent, accidental or external means, and that the very existence of an infection demonstrated that an accident must have occurred. "The germ enters from the outside; therefore, it is external. It is a foreign substance forced into the circulatory system; therefore, it enters by violence. Its entry was not intended or expected; therefore, it was accidental."

██ Another point urged by appellant is that the policy here sued upon requires that in order for the plaintiff to recover it must be established that the insured suffered an accidental injury which immediately from the date of the

injury, continuously and wholly disabled the insured. The company now claims plaintiff failed to so prove. The facts here in evidence show that Mr. Zugar first complained of pain in the hand at 5 o'clock in the afternoon of March 12th. The next morning he visited Dr. Dozier who treated the infection. Dr. Dozier testified that such an infection would appear within twelve hours of the time of entrance of the bacteria, and that, in his opinion, ''when I first saw him on the 13th of March, it was apparent that something had happened within the twenty-four hours preceding the time I saw the man'', and the doctor testified, as we have already pointed out, that the length of time in which such an infection would become apparent depended upon the virulence of the organism and the ability of the patient to resist the infection, and that in this case the infection was very virulent ''because it has gone so terribly fast, and it was too virulent for the man to fight''.

While courts are not altogether in accord in the interpretation of the meaning of the words ''immediately and totally disabling'' as used in the policy, the weight of authority is toward the so-called process of nature rule; that is, that when a disability follows from an accidental injury within such time as the processes of nature consume in bringing the affected person to the state of total incapacity to prosecute every kind of business pertaining to his occupation such disability is immediate under the terms of the policy. (6 Cooley's Briefs on Ins., 2d ed., 5269; 7 Couch, Cyclopedia of Ins. Law, 5786; 1 Cor. Jur., p. 468; 41 A. L. R. 1376, note.

In *Feeley* v. *Boyd*, 143 Cal. 282 [76 Pac. 1029, 65 L. R. A. 943], our court, in construing the words ''immediate delivery'' in a contract of sale held such language does not mean a delivery instantly, but must be given a reasonable construction. From the evidence in the instant case all of the doctors testified that septicaemia would become visible in from eight to twenty-four hours, although one defense doctor said it might be several days before the infection was demonstrated. In *Thomas* v. *Mutual Benefit etc. Assn.*, 136 Kan. 802 [18 Pac. (2d) 151], the same defendant we here have before us, raised the same question now under consideration upon identical policy provisions, and the strict construction contended for was rejected by the court in a well considered opinion.

414

The last point urged by appellant is that plaintiff is prevented from recovering for the death of the insured by the provisions of part K of the policy, which provides that, "Any accidental injury, fatal or otherwise, resulting in . . . infection, septicaemia . . . , shall be paid as provided in Parts H or I, anything to the contrary notwithstanding". Part H provides for payment at the rate of $48 per week, disability, resulting from diseases which confine the insured continuously within doors and requires regular visits by a physician. Part I provides for the payment of $24 per week disability resulting from diseases which do not confine the insured continuously indoors.

Respondent contends that part K in the policy is invalid for the reason, it does not conform to the requirements of the Insurance Code (Stats. 1935, p. 496), formerly found in Statutes of 1917, page 957, Deering's General Laws, Act 3736, which provides that any portion of a policy of accident and health insurance which purports, by reason of the circumstances under which a loss is incurred, to reduce any indemnity promised therein to an amount less than that provided for the same loss occurring under ordinary circumstances, shall be printed in bold face type and with greater prominence than any other portion of the text of the policy.

Appellant suggests that this question was not raised during the trial and that it had no opportunity to show that this particular form of policy here involved was filed with the state insurance commissioner of the state of California, and approved by that officer on the 26th of July, 1919. Regardless of the fact that this particular provision and the policy itself was approved by the state insurance department does not prevent us from considering the matter, and stating that in our opinion the policy is misleading and does not conform to the requirements of the Insurance Act. Part A states that if the insured shall, through accidental means, sustain bodily injuries as described in the insuring clause, that the company will pay certain losses. No restriction or limitation appears cutting down this general language nor is any reference made to any later provision. In part K, however, appears the language hereinbefore quoted to the effect that any accidental injury, fatal or otherwise, resulting in various specified injuries shall be paid upon an entirely different scale and standard than that set forth in part A.

The policy itself is divided into two parts, part A appearing under the heading, Accident Indemnities, and part K is found under Illness Indemnities.

In the case of *Mutual Benefit, Health & Accident Assn.* v. *Ryder*, 166 Va. 446 [185 S. E. 894], we again have the same company as here before us, presenting a case very similar to the situation here. In that case the assured was injured on September 29th, when the index finger of his right hand was lacerated. He dressed the wound himself until October 10th, when a physician was called, and found that infection had developed. Treatment was continued for some time, then first the finger was amputated, and later the arm. The assured grew worse and died on December 15th. The evidence showed that the assured died of blood poisoning as the result of the wound in his finger. The provisions of the policy carried by him are almost identical with the provisions of the policy under consideration. It was contended by the company that this provision prevented the plaintiff from making a recovery under the policy. In a well considered case supported by many authorities the court there held that blood poisoning resulting from an accidental wound was within the protection of the policy. The court also held that in accident and health policies the insurer could not in any policy for one accident promise to pay a certain sum and then reduce such sum by another method of calculation.

Part A of the policy under discussion promises to pay for certain specific losses which have occurred within thirteen weeks from the date of the accident "in lieu of all other indemnity". It purports to be a complete method of dealing with the specific losses there mentioned. It does not refer to part K or to any portion of the policy for clarification. In the case of a death benefit the assured is allowed over three months from the date of the accident within which to die and the association is still liable. It would hardly be possible for anyone to receive an accidental injury which subsequently caused his death to go through a period of thirteen weeks without developing some one of the specific conditions named in part K.

However, assuming that it was the intention of the association that part K should refer back to part A, then it was violative of the various provisions of the Insurance Code

which prescribes the manner of printing such exceptions in the policy, and part K must therefore be held as invalid.

If, however, the language of part A and part K may be considered as conflicting then the general rule should apply that where the language of the policy is susceptible of two constructions that which is most beneficial to the insured should be adopted.

For the foregoing reasons the judgment should be affirmed, and it is so ordered.

Thompson, J., and Plummer, J., concurred.

A petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on August 29, 1938.