[Civ. No. 24560.   First Dist., Div. Three.   Jan. 10, 1969.]

EARL L. SCHMIDT, Plaintiff and Appellant, v. PACIFIC MUTUAL LIFE INSURANCE COMPANY, Defendant and Respondent.

Morgan, Beauzay, Wylie, Ferrari & Leahy, Morgan, Beauzay & Hammer and Philip L. Hammer for Plaintiff and Appellant.

Malavos, Mager & Chasuk and Chalmers Smith for Defendant and Respondent.

SALSMAN, J.—Appellant Earl L. Schmidt filed an action against respondent Pacific Mutual Life Insurance Company seeking declaratory relief concerning his rights under a policy of insurance issued by respondent and entitled "New Accident and Sickness Disability Benefits" policy. After a hearing and an examination of the policy the trial court concluded that appellant was not entitled to relief and entered judgment to that effect. From our review of the record and consideration of the applicable principles of law we have reached a contrary conclusion and therefore reverse the judgment, with directions to enter judgment for the appellant.

There is no dispute as to the facts. Appellant purchased a health and accident contract from respondent in 1944. On March 20, 1961, appellant sustained an injury while at work. He finished his shift, however, and then went to see a doctor. After an examination, the doctor recommended treatment by a physiotherapist. Thereafter appellant took physiotherapy treatments at least three times each week. Although he suffered back pain and was "in a lot of misery" he continued to work for 75 days after his March 20th injury. By June 5,

1961 his condition was such that he could not perform even minor tasks connected with his work and accordingly he left his employment on that date and has been unable to work since. At trial, there was no evidence presented to refute his claim that the March 20th accident and injury caused him to become totally disabled and thereby unable to engage in any occupation or employment for profit.

Before discussing the terms of the contract in issue here and rules of construction applicable to it, something must be said about the general nature of the contract itself. A photographic copy of the contract is before us, as part of the clerk's transcript. It consists of a lengthy printed form. There is nothing in its several parts that relates directly to appellant as an individual except the number given the contract, the amount of the premium, appellant's name and occupation, the date and the dollar amount of benefits payable. The remainder of the contract, a lengthy one, is a sea of print, closely defining such things as "accident benefits," "sickness benefits," hospital benefits, total disability, and containing numerous provisions entitled "Exceptions and Reductions" followed by extensive "Standard Provisions" and "Additional Provisions." An examination of the contract makes plain that it is one entirely written by the insurance company, reduced to a standard printed form, and is of the kind commonly carried as inventory by insurance companies doing a health and accident business. It is a matter of common knowledge that such contracts are tendered to the public on a "take it or leave it" basis, and that little if any genuine bargaining takes place between the insurance company and the purchaser of the insurance.

Contracts such as the one now before us have been described as contracts of adhesion, by which is meant ". . . a standardized contract which, imposed and drafted by the party of superior bargaining strength, relegates to the subscribing party only the opportunity to adhere to the contract or reject it." (Kessler, *Contracts of Adhesion* (1943), 43 Colum.L.Rev., p. 629.) Despite the fact that such contracts are the product of mass production and afford the party to whom they are tendered little if any room in which to bargain, they are perfectly valid, indeed useful, and in the absence of ambiguity are enforced according to their terms. (*Neal* v. *State Farm Ins. Cos.*, 188 Cal.App.2d 690, 694 [10 Cal.Rptr. 781].) If a contract of adhesion is found to be ambiguous, the same well recognized rules of construction

are applied to it as are applied to other contracts. (See *Maxon* v. *Security Ins. Co.,* 214 Cal.App.2d 603, 611 [29 Cal.Rptr. 586] for a detailed recital of rules of construction as applied to insurance contracts.) Three of the rules expressed in *Maxon* are: (1) Any ambiguity or uncertainty in the contract is to be resolved against the insurer; (2) if semantically permissible, the contract will be given such construction as will fairly achieve its object of securing indemnity to the insured for losses to which the insurance relates; and (3) if the insurer uses language which is uncertain, any reasonable doubt will be resolved against it. To this list of rules our Supreme Court has added two refinements, peculiarly applicable to contracts of adhesion, especially insurance contracts.

Thus, in *Atlantic Nat. Ins. Co.* v. *Armstrong,* 65 Cal.2d 100, 112 [52 Cal.Rptr. 569, 416 P.2d 801], in reference to an insurance contract, the court noted that the form must be interpreted in the light of the reasonable and normal expectations of the parties as to the extent of the coverage; and in *Steven* v. *Fidelity & Cas. Co.,* 58 Cal.2d 862, 878 [27 Cal.Rptr. 172, 377 P.2d 284], the court, speaking of an exclusionary clause in such a contract, declared: ''If it [the insurer] deals with the public upon a mass basis, the notice of non-coverage of the policy, in a situation in which the public may reasonably expect coverage, must be conspicuous, plain and clear.'' (See also *Gray* v. *Zurich Ins. Co.,* 65 Cal.2d 263, 271 [54 Cal.Rptr. 104, 419 P.2d 168].)

The first question we must answer here is whether or not there is an ambiguity in the contract. The trial court concluded that its language was plain and unambiguous. In reaching this conclusion the court was not aided by any extrinsic evidence but considered only the language of the contract itself. Where such is the case, an appellate court is not bound by the findings of the trial court. On the contrary, it is the duty of the appellate court in such cases to make its own independent determination of the meaning of the language used in the instrument under consideration. (*Faus* v. *City of Los Angeles,* 67 Cal.2d 350, 360 [62 Cal.Rptr. 193, 431 P.2d 849]; *Parsons* v. *Bristol Dev. Co.,* 62 Cal.2d 861, 865 [44 Cal.Rptr. 767, 402 P.2d 839], and cases cited; *Estate of Platt,* 21 Cal.2d 343, 352 [131 P.2d 825], and cases cited.)

An examination of the contract reveals that the company, immediately after reciting the amount of the premium, the name of the insured, and the date of the policy, makes two major promises, both of which were undoubtedly appellant's

main reasons for entering into the contract. The first promise is to pay $100 per month for bodily injury sustained through accidental means, and the second to pay a like sum for sickness contracted after the date of the policy. Thereafter the policy contains two paragraphs, under the heading, in bold type: "Accident Benefits." Beneath this heading, in the margin opposite paragraph (a) the words "Total Disability" appear. Then follows the language of paragraph (a), which reads as follows: "The Accident Monthly Indemnity—will be paid for the period, not exceeding twelve months, which commences while this Policy is in force and within twenty days after the date of the accident, throughout which such injuries wholly and continuously disable the Insured and prevent him from performing every duty pertaining to his occupation. After the payment of Accident Monthly Indemnity for twelve months, as aforesaid, the Company will continue the payment of Accident Monthly Indemnity at the same rate thereafter as long as the Insured shall be wholly and continuously disabled and prevented by such injuries from engaging in any occupation or employment for wage or profit."

The critical words in the foregoing paragraph are ". . . and within twenty days after the date of the accident. . . ." Respondent contends there is no ambiguity in this language, and that since appellant's disability did not occur within 20 days of the accident, the policy must be given effect strictly according to its terms and recovery denied. We disagree.

The initial emphasis of the contract language is upon the company's promise to pay $100 per month as indemnity for loss due to accidental means. Further emphasis upon benefits to be received is added under the prominent heading "Accidental Benefits." Here the company first promises to pay benefits for a period of 12 months but, in mid-sentence, abruptly shifts direction to state a vital condition to the payment of any benefits, namely that the period of indemnity must commence ". . . within twenty days after the date of the accident." The next sentence resumes the emphasis upon benefits to be paid, promising to pay ". . . as long as the Insured shall be wholly and continuously disabled. . . ." We conclude that the presence of the discordant and inharmonious phrase ". . . within twenty days after the date of the accident . . ." appearing in an unexpected place renders this contract ambiguous, and that it does not thereby comply with rules declared by our Supreme Court in such cases as *Atlantic, Steven* and *Gray, supra.*

The reasonable and normal expectations of appellant, as a buyer of accident insurance providing benefits in the event of total disability would be that, in the event of total disability, he should receive the benefits of the policy. The contract itself tells him he will not be entitled to any benefits until an accident had totally disabled him. On the other hand, he would have no reason to expect that, if injured through accidental means and totally disabled, he would not be entitled to any benefits unless his total disability has appeared ". . . within twenty days" of his injury. It seems clear to us that where, as here, total disability results from an accidental injury, and payment under the policy is claimed to be barred by an exclusionary clause inserted incidentally in a paragraph dealing with promised benefits, the reasonable and normal expectations of the insured are disappointed by a literal application of contract language. (*Atlantic Nat. Ins. Co.* v. *Armstrong, supra,* p. 112.) Moreover, the exclusionary language of the policy does not meet the ". . . conspicuous, plain and clear . . ." standard demanded by *Steven* and *Gray, supra.* As we have seen, the provisions stripping the buyer of any benefits under the contract unless total disability results within 20 days of the disabling accident is embedded within a sentence describing benefits to be paid and their duration. The stress of the paragraph is upon the affirmative promise of benefits to be paid in the event of total disability, rather than upon the negative condition that deprives the buyer of all benefits. The critical importance of the exclusionary language is illustrated by the facts of this case, where the buyer's right of recovery has been barred before it arose.

We do not dispute respondent's right to insert in its contracts of insurance a provision that will limit a buyer's right to recover benefits to those cases where total disability is caused ". . . within twenty days after the date of the accident." We merely say that where, as here, such an exclusionary provision disappoints the reasonable expectations of the buyer, and fails to pass the ". . . . conspicuous, plain and clear . . ." test prescribed by our Supreme Court, it cannot operate to defeat the buyer's rights.

The judgment is reversed, with directions to enter judgment for the appellant.

Draper, P. J., and Brown (H.C.), J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied March 5, 1969.