[Civ. No. 24841.   First Dist., Div. Two.   May 23, 1969.]

AUGUST R. SCHILK, Plaintiff and Respondent, v. BENE-
FIT TRUST LIFE INSURANCE COMPANY, Defend-
ant and Appellant.

Maloney, Chase, Fisher & Hurst, John R. Maloney and Michael E. Myers for Defendant and Appellant.

Hildebrand, McLeod & Nelson, Sea & Hanna and Donald M. Sea for Plaintiff and Respondent.

TAYLOR, J.—On this appeal by Benefit Trust Life Insurance Company, hereafter the insurer, from an adverse judgment in respondent's action to recover permanent disability benefits, the main question is whether the trial court correctly applied the ''process of nature'' rule to the policy provision in question.

As there are no contentions concerning the sufficiency of the evidence, a brief statement of the facts, substantially as found by the trial court, will suffice.

In November 1958, the insurer issued to respondent its accident and sickness policy No. D2-626871 for railway employees, the pertinent provisions of which are set forth in the footnote below.[1]

---

[1] ''PART III        MONTHLY ACCIDENT BENEFIT

''     .  .  .  .  .  .  .  .  .  .  .  .

''(B) When 'such injury' shall, independently of any and all other causes, within twenty days of the date of the accident, totally and continuously disable the Insured and prevent him from performing all of the duties pertaining to his occupation, the Association will pay an indemnity at the rate of the Monthly Accident Benefit for loss of time while the Insured is so disabled, for a period not to exceed twelve months.

''At the end of such twelve months, the Association will continue to pay, subject to the applicable maximum period, at the same rate so long as the Insured shall live and be totally and continuously disabled as the

On September 27, 1961, while employed as a carpenter by the Union Pacific Railroad Company, respondent was involved in an on-the-job accident in Las Vegas, Nevada. Between the date of the accident and February 2, 1962, respondent was not totally and continuously disabled. However, on February 2, 1962, as a proximate result of the whiplash injury sustained in the accident, and independently of any and all other causes, respondent became totally disabled and prevented from performing all of the duties pertaining to his occupation as a carpenter or any other occupation, and so remained.

Before the insurer paid any loss of time benefits to respondent, it notified respondent by letter dated March 16, 1962, that since his loss of time disability did not begin until more than 100 days after September 27, 1961, he would not be entitled to any benefits or, at most, to benefits aggregating only $150 under the accident disability provisions. The insurer further informed respondent that it would be willing to pay monthly loss of time disability benefits under the sickness disability provisions of the policy pursuant to Part IV.

With its letter of March 16, 1962, the insurer transmitted and tendered a check for $100 for the first month's loss pursuant to the sickness disability provisions of the policy and told respondent to obtain independent advice as to whether he should accept payment of this benefit. The letter also instructed respondent that if he did not agree to the payment of the benefits under the sickness disability provisions, the check should be returned, and that acceptance of the $100 check by

---

result of 'such injury' and be prevented from engaging in any occupation or work for wages or profit.

"(C) If 'such injury' shall not within twenty days but shall within one hundred days from the date of the accident wholly disable the Insured, the Association will pay an indemnity for the period of total disability (not exceeding three months) at the rate of one-half the monthly Accident Benefit.

"(D) If 'such injury' shall, commencing with the date of the accident or immediately following total loss of time, prevent the Insured from performing one or more but not all of the daily duties of his occupation, the Association will pay an indemnity for such period of continuous partial disability (not exceeding three months) at the rate of one-half the Monthly Accident Benefit.''

''PART IV        MONTHLY SICKNESS BENEFIT

''When 'such sickness' shall, commencing while this policy is in full force, wholly and continuously disable and prevent the Insured from engaging in any occupation or work for wages or profit, the Association will pay an indemnity at the rate of the Monthly Sickness Benefit specified in the Schedule for loss of time for the period the Insured shall be so disabled and under the regular care and treatment of a legally qualified physician or surgeon other than himself, not exceeding the period of time specified in the Schedule as 'Monthly Sickness Benefit - Maximum Period.' ''

respondent would constitute an agreement to the payment of monthly disability benefits under the sickness disability provisions.

On receipt of the March 16 letter, respondent sought and received independent advice from an official of his union concerning the matter, and cashed the first check with full knowledge of and agreement to the terms and conditions on which it was tendered. Thereafter, respondent received from the insurer subsequent payments of $100 a month through February 1, 1963, a total of $1,200. After the insurer transmitted the last of these monthly payments, respondent did not file any further proofs of continuing disability and loss. This action ensued after the insurer refused to make any further payments to respondent under the total disability provisions of the policy.

The court further found that since February 2, 1962, respondent has been totally disabled and that his disability was proximately caused by the injuries suffered on September 27, 1961; that the total disability was present and continuing as a result of the injuries suffered on September 27, 1961; and that at the time respondent entered into the agreement of March 16, 1962, his bargaining position, because of his age, education and station in life, was less than that of the insurer. The court concluded that the insurer was not estopped by means of any conduct on its part; and that respondent was not estopped from claiming benefits under the total disability provisions of the policy.

The court further concluded that the term disability, as used in the total disability provision, was ambiguous; that the "process of nature" rule was applicable; that respondent was and has been totally disabled from February 2, 1962; that such disability was present and continuing; and that he was entitled to total disability benefits under the policy. Accordingly, the court entered its judgment in favor of respondent against the insurer for the sum of $100 per month, commencing February 2, 1963 and continuing thereafter.

■ On this appeal, the insurer first contends that the trial court erred in concluding that respondent was not estopped from claiming total disability benefits and in applying the "process of nature" rule. We do not agree.

As indicated above, the trial court found that because of the disparate bargaining positions of the parties at the time of the insurer's letter concerning the sickness benefit, respondent was not estopped from claiming the total disability benefit.

The existence of an estoppel is a question of fact for the trial court and its decision that an estoppel has not been made is binding on appeal unless the opposite conclusion is the only one that can reasonably be drawn from the facts (*People* v. *Watkins*, 175 Cal.App.2d 182, 185 [345 P.2d 960]).

The main contention on appeal concerns the proper interpretation of Part III, Section (B) of the policy, which provides that total disability benefits are payable when within 20 days of the date of the accident, the injury totally and continuously disabled the insured and prevented him from performing all of the duties pertaining to his occupation. Appellant argues that since the language of the above provision was clear and unambiguous, there was no reason for the trial court to interpret the policy and apply the ''process of nature'' rule. We cannot agree.

The ''process of nature'' rule was first adopted in this state in *Frenzer* v. *Mutual Benefit Health & Acc. Assn.*, 27 Cal.App.2d 406 [81 P.2d 197], and therein stated as follows, at page 413 : ''While courts are not altogether in accord in the interpretation of the meaning of the words 'immediately and totally disabling' as used in the policy, the weight of authority is toward the so-called process of nature rule; that is, that when a disability follows from an accidental injury within such time as the processes of nature consume in bringing the affected person to the state of total incapacity to prosecute every kind of business pertaining to his occupation such disability is immediate under the terms of the policy.''

The rationale for the rule is set forth in *Rathbun* v. *Globe Indem. Co.*, 107 Neb. 18 [184 N.W. 903, 24 A.L.R. 191], wherein the court pointed out that it was a matter of common knowledge that in a large majority of instances in which bodily injuries are received, the real nature and extent of injuries are not revealed until some time in the future and after the first pains have passed away. The court said: ''The injured part often lies dormant for an indefinite period, with but little or no consciousness of its existence by the person injured, although from the very moment of the accident, perhaps the processes of nature may be busily engaged in developing what may have seemed to be a slight hurt into a most serious and perhaps fatal injury.'' The weight of authority is that in such instances, the disability is held to be continuous from the date of the accident.

In the instant case, the uncontroverted evidence indicated that respondent sustained a whiplash injury, which allowed

him to continue to work for about five months after the occurrence of the accident, but became totally disabling thereafter.

■ Thus, the court followed the process of nature rule that the disability is immediate within the meaning of a total disability provision when it follows directly from an accidental hurt within such time as the process of nature consumes in bringing the person affected to a state of total incapacity to perform any kind of work pertaining to his occupation. The insurer has cited no cases decided after *Frenzer* indicating that the process of nature rule is not still the law of this state. ■ Precisely because the process of nature rule is the law of this state, the quoted provision of Part III (B) is ambiguous. ■ It is well settled that in construing an insurance policy, it must be borne in mind that where two constructions are reasonable, that which is more favorable to the insured should be adopted (*Tavares* v. *Glens Falls Ins. Co.*, 143 Cal.App.2d 755, 761 [300 P.2d 102]).

The insurer here attempts to distinguish the *Frenzer* case, as therein the policy provided that the insured be totally disabled "immediately" after the accident, while the policy in the instant case provided that the total disability occur within 20 days of the accident. However, we see no distinction for this purpose between the two provisions. The reasoning applied to the word "immediately" in *Frenzer* has equal force when the language of a policy provides a specific number of days, as here. In *Murphy* v. *Travelers Ins. Co.*, 141 Neb. 41 [2 N.W.2d 576], the reasoning was applied to a policy providing for total disability within 30 days from the date of the accident. *Murphy*, like *Frenzer*, relied on *Thomas* v. *Mutual Benefit Health & Acc. Assn.*, 136 Kan. 802 [18 P.2d 151, 153].

■ We conclude that the trial court properly applied the "process of nature" rule to conclude that respondent was totally disabled within 20 days of the accident.

■ The insurer further argues that the words "within twenty days from the date of the accident" are so plain and definite that they are not subject to construction. If so, then, the clause involved must be ignored under other well established rules, namely, that when the strict enforcement of a provision of an insurance policy will result in unreasonable and unjust forfeitures or an absurd result, the courts will refuse to enforce the strict meaning of the language of the policy. As noted above, serious internal injuries often do not manifest themselves until long after the accident happened and the injured person may be completely oblivious of his

condition, although the process of nature may be actively engaged in developing the latent hurt into a severe or even fatal injury. The fact that respondent, under such circumstances, pursued his usual occupation and performed some or even all of his occupational duties ought not, in all fairness, militate against him when the more serious but hidden injury subsequently manifests itself.

The strict interpretation of the clause here would lead to an unjust result (*Murphy* v. *Travelers Ins. Co., supra*). In addition, to give literal interpretation to the provision here in question would be to unreasonably restrict the coverage of the policy to a very small and minute number of instances of total disability resulting from accident, namely, only those that manifested themselves within 20 days after the occurrence of the accident. Such a very limited and highly technical construction of an insurance contract cannot be foisted onto a layman nor does it make any sense in terms of the risks insured against (cf. *California Comp. & Fire Co.* v. *Industrial Acc. Com.*, 62 Cal.2d 532 [42 Cal.Rptr. 845, 399 P.2d 381]). Accident insurance is not a method of procuring premiums on unreasonable phrases preventing recovery from accidental injury. There should be honest and fair dealings on both sides (*McCleneghan* v. *London Guar. & Acc. Co.*, 132 Neb. 131 [271 N.W. 276, 279]).

At the oral argument, both parties cited *Schmidt* v. *Pacific Mut. Life Ins. Co.*, 268 Cal.App.2d 735 [74 Cal.Rptr. 367], decided by this court (Division Three) on January 10, 1969. In *Schmidt*, the court held that a limitation similar to the one here in issue in an accident and liability policy was ambiguous under the rule covering contracts of adhesion, and could not operate to defeat the buyer's rights. As the policy in the instant case (also on a printed form and a contract of adhesion) suffers from substantially the same defect as the one in *Schmidt, supra*, the judgment herein could be affirmed on that ground alone. However, the court in *Schmidt* never reached the "process of nature" rule, on which the lower court in this case based its decision.

Affirmed.

Shoemaker, P. J., and Agee, J., concurred.

A petition for a rehearing was denied June 20, 1969, and appellant's petition for a hearing by the Supreme Court was denied July 16, 1969.