[S.F. No. 23360. Dec. 21, 1976.]

ROBERT WILLDEN, Plaintiff and Appellant, v.
WASHINGTON NATIONAL INSURANCE
COMPANY, Defendant and Respondent.

**COUNSEL**

Bruce I. Cornblum for Plaintiff and Appellant.

Hoge, Fenton, Jones & Appel and Randall E. Willoughby for Defendant and Respondent.

## Opinion

**TOBRINER, J.**—This case involves the interpretation of an accident and disability policy. As a result of injuries caused by an automobile accident in 1966, the record indicates that plaintiff began to suffer debilitory effects of multiple sclerosis, finally becoming totally disabled in February of 1969. After receiving special verdicts, the trial court denied plaintiff's claim for accident disability benefits. That judgment rests on two grounds: (1) that plaintiff's condition did not reach the point of total disability within 30 days after the accident, and (2) that because plaintiff was not totally disabled during the two years preceding February of 1969, he was not "totally and continuously" disabled as required by the policy language. We affirm the judgment on the first listed ground.

Defendant issued plaintiff a "Disability Income Policy for Realtors and Real Estate Salesmen" in 1965. Part 2 of the policy provides 60 months' coverage for injuries which "totally and continuously disable the Insured within thirty days of the date of the accident so as to prevent him from performing each and every duty pertaining to his occupation."[1] If, after payment of disability benefits for 60 months, the insured is unable to perform "each and every duty pertaining to any gainful occupation," the policy provides additional benefits for as long as the disability continues. The policy also extends one year of benefits for total disability caused by sickness.

Plaintiff, a real estate salesman, was injured in an automobile accident on February 11, 1966. He experienced tremors in his leg the following day; numbness in the leg by April of 1966; and on October 10, 1966, his condition was diagnosed as multiple sclerosis. Unemployed from April of 1966 to April of 1967, he obtained a business license and worked as a real estate and business opportunity broker until 1972. His condition continued to deteriorate, and he was unable to resume any gainful employment until May 1, 1973. The duration of plaintiff's total disability was disputed at trial, but partially resolved by a special verdict that plaintiff was not totally disabled between April 21, 1967, and February 25, 1969, but was totally disabled thereafter.

---

[1] The portion of part 2 providing occupational disability benefits reads as follows: "If injury shall totally and continuously disable the Insured within thirty days from the date of the accident so as to prevent him from performing each and every duty pertaining to his occupation, the Company will pay at the rate of the Monthly Accident Indemnity for the period of such total disability beginning with the day of total disability specified in the Policy Schedule, but not exceeding sixty months during any one period of disability."

Defendant paid plaintiff one year of sickness benefits, terminating on April 21, 1967. Plaintiff then sued for accident benefits accruing after that date. At trial, plaintiff, appearing in propria persona, presented expert testimony that his multiple sclerosis was precipitated by the trauma of the automobile accident. The jury returned a special verdict finding plaintiff's "disability resulted directly and independently of all other causes from the accident of February 11, 1966." (Verdict No. 1 of Aug. 13, 1973.)[2] The trial court then requested additional special verdicts, and the jury rendered a finding that plaintiff was not totally and continuously disabled within 30 days of the accident. (Verdict No. 1 of Aug. 14, 1973.)[3] In response to the court's inquiry as to the periods subsequent to April 21, 1967, when plaintiff was totally and continuously disabled, the jury specified a beginning date of February 25, 1969, and no ending date. (Verdict No. 3 of Aug. 14, 1973.)[4] On the basis of these special verdicts the trial court entered judgment for defendant, and plaintiff appealed.

█ As we have observed, part 2 of the policy (see fn. 1, *ante*) provides occupational disability benefits if the injury "shall totally and

[2]The special verdict of August 13, 1973, reads as follows: "We, the jury in the above-entitled action find the following special verdict in said action: [¶] (1) Do you find by a preponderance of the evidence that Mr. Willden's disability resulted directly and independently of all other causes from the accident of February 11, 1966?
"ANSWER     Yes     ."

[3]The first special verdict of August 14, 1973, states: "We, the jury in the above-entitled action find the following special verdict in said action: [¶] (1) Do you find by a preponderance of evidence that the injury suffered by the Plaintiff totally and continuously disabled him within thirty (30) days from the date of the accident so as to prevent him from performing each and every duty pertaining to his occupation?
"ANSWER:     No     ."

[4]The second special verdict of August 14, 1973, inquired: "Do you find by a preponderance of the evidence that Mr. Willden was totally and continuously disabled from each and every substantial function of his occupation as a Real Estate Salesman for any period after April 21, 1967?" the jury responded, "Yes."
The verdict form then directed the jury to answer a third interrogatory. The jury returned the following verdict:
"(3) If you find by a preponderance of evidence that Mr. Willden was totally and continuously disabled from each and every substantial function of his occupation as a Real Estate Salesman beyond April 21, 1967, you are instructed to enter below the beginning and ending dates of any periods of time during which you find he was so *disabled.*
"Periods of total and continuous disability after April 21, 1967.

| *Beginning Date* | *Ending Date* |
| --- | --- |
| February 25, 1969 | |

On receiving the verdict, the court noted the jury's failure to specify an ending date, and inquired whether "it was the finding of the jury that the periods of continuous disability was [*sic*] from February 25, 1969 *to date*?" (Italics added.) The foreman responded, "yes."

continuously disable the Insured *within thirty days from the date of the accident* so as to prevent him from performing each and every duty pertaining to his occupation." (Italics added.) Consequently the special verdict that plaintiff was *not* totally and continuously disabled within 30 days of the accident appears to bar his claim for accident disability benefits.

Plaintiff contends, however, that the special verdict rests upon a construction of the policy which is inconsistent with the judicially recognized "process of nature" rule. The "process of nature" rule holds that, within the meaning of policy provisions requiring disability within a specified time after the accident, the onset of disability relates back to the time of the accident itself whenever the disability arises directly from the accident "within such time as the process of nature consumes in bringing the person affected to a state of total [disability]." (*Schilk* v. *Benefit Trust Life Ins. Co.* (1969) 273 Cal.App.2d 302, 307 [78 Cal.Rptr. 60, 39 A.L.R.3d 1019].)

The process of nature rule, created by judicial decision in other states in response to the efforts of insurers to enforce arbitrary limitations on coverage, was first established in California in *Frenzer* v. *Mutual Ben. H. & A. Assn.* (1938) 27 Cal.App.2d 406 [81 P.2d 197]. In *Frenzer,* the insured became disabled from blood poisoning and later died; medical testimony opined that the blood poisoning resulted from a minor injury incurred several hours before any symptoms became evident. Rejecting the insurer's contention that recovery was barred by a provision limiting benefits to injuries which are "immediately and totally disabling," *Frenzer* stated that "While courts are not altogether in accord in the interpretation of the meaning of the words 'immediately and totally disabling' as used in the policy, the weight of authority is toward the so-called process of nature rule; that is, that when a disability follows from an accidental injury within such time as the processes of nature consume in bringing the affected person to the state of total incapacity to prosecute every kind of business pertaining to his occupation such disability is immediate under the terms of the policy." (27 Cal.App.2d at p. 413.)

The Court of Appeal decision in *Schilk* v. *Benefit Trust Life Ins. Co., supra,* 273 Cal.App.2d 302, confirmed the process of nature rule and applied that rule to interpret a policy essentially identical to the policy at issue here. Schilk sustained a whiplash injury on September 27, 1961,

and became totally disabled as of February 2, 1962. In denying benefits, the insurer relied on a provision limiting coverage to injuries which "within twenty days of the date of the accident, totally and continuously disable the Insured." The Court of Appeal, however, upheld the trial court's conclusion that under the process of nature rule *Schilk* was deemed disabled within the policy's 20-day period. Rejecting the insurer's attempt to distinguish *Frenzer,* the court stated that "The reasoning applied to the word 'immediately' in *Frenzer* has equal force when the language of a policy provides a specific number of days, as here." (273 Cal.App.2d 302, 307.)

On the facts of this case the jury should have been instructed concerning the process of nature rule. Plaintiff, however, bears the fault for the court's failure to so instruct the jury. As the Court of Appeal explained in *Downing* v. *Barrett Mobile Home Transport, Inc.* (1974) 38 Cal.App.3d 519, 523 [113 Cal.Rptr. 277]: "In a civil case, each of the parties must propose complete and comprehensive instructions in accordance with his theory of the litigation; if the parties do not do so, the court has no duty to instruct on its own motion." (Accord *Phillips* v. *Noble* (1958) 50 Cal.2d 163, 166 [323 P.2d 385]; *Switzer* v. *State of California* (1969) 269 Cal.App.2d 627, 635-636 [75 Cal.Rptr. 371] and cases there cited.) Plaintiff proposed no instruction concerning the process of nature rule, and consequently cannot complain of the court's failure to instruct on that subject. (*Barrera* v. *De La Torre* (1957) 48 Cal.2d 166, 170 [308 P.2d 724].)[5]

Plaintiff further contends that the 30-day provision of the policy is unconscionable and hence, invalid as a matter of law. No authority supports this contention; the cases clearly indicate that similar provisions, *if* interpreted in accord with the process of nature rule, are not unconscionable. (See *Schmidt* v. *Pacific Mut. Life Ins. Co.* (1969) 268 Cal.App.2d 735, 740 [74 Cal.Rptr. 367]; *Schilk* v. *Benefit Trust Life Ins. Co., supra,* 273 Cal.App.2d 302, 307-308.) The harsh and arguably unconscionable application of the 30-day provision[6] to bar plaintiff's claim in the present case is the result of plaintiff's failure to seek a jury instruction based upon the more liberal process of nature rule.

[5]Indeed plaintiff never mentioned the process of nature rule during the trial of this case. His contention thus may also be barred by the principle that issues not raised in the trial court cannot be raised for the first time on appeal. (See *Estate of Westerman* (1968) 68 Cal.2d 267, 279 [66 Cal.Rptr. 29, 437 P.2d 517] and cases there cited.)

[6]As Justice Taylor pointed out in *Schilk* v. *Benefit Trust Life Ins. Co., supra,* 273 Cal.App.2d 302, in discussing a similar limitation ". . . [S]erious internal injuries often do

Finally, plaintiff raises a number of contentions relating to his right to recover for recurrent disability, his right to nonoccupational disability benefits, and the effect on those rights of the special verdicts relating to the duration of total disability. Under the terms of the policy, however, none of those arguments can avail plaintiff if his right to policy benefits in general is barred by the 30-day limitation. The jury's special verdict finding that plaintiff's disability did not become total within 30 days of the injury thus compels the conclusion that plaintiff is not entitled to any policy benefits.

The judgment is affirmed.

Wright, C. J., McComb, J., Sullivan, J., Clark, J., and Richardson, J., concurred.

**MOSK, J.**—I dissent.

The majority, while in effect approving application of the process of nature rule, penalize the plaintiff, who appeared in propria persona, for having lacked the professional skill to offer adequate jury instructions on the subject. Yet the learned trial court failed to recognize it received a special verdict that should be interpreted as consistent with the process of nature rule, overlooked its duty to ignore irrelevant jury responses or in the alternative to require the jury to reconcile ambiguous replies to special queries, undertook to complete the fact-finding process itself, and then decided the disputed issues against the plaintiff. I would reverse the judgment so that at a new trial the basic issues can be resolved properly.

This is clearly a case for application of a rule of law which has been in effect in California for nearly four decades. In *Frenzer* v. *Mutual Ben. H. & A. Assn.* (1938) 27 Cal.App.2d 406 [81 P.2d 197], the disability policy required an injury "immediately and totally disabling." The court held that "the weight of authority is toward the so-called process of nature rule; that is, that when a disability follows from an accidental injury

not manifest themselves until long after the accident happened and the injured person may be completely oblivious of his condition, although the process of nature may be actively engaged in developing the latent hurt into a severe or even fatal injury. The fact that respondent, under such circumstances, pursued his usual occupation . . . ought not, in all fairness, militate against him when the more serious but hidden injury subsequently manifests itself." (Pp. 307-308.) "The strict interpretation of the clause here," Justice Taylor concluded, "would lead to an unjust result. . . . Such a very limited and highly technical construction of an insurance contract cannot be foisted onto a layman nor does it make any sense in terms of the risks insured against." (P. 308.)

within such time as the processes of nature consume in bringing the affected person to the state of total incapacity to prosecute every kind of business pertaining to his occupation such disability is immediately under the terms of the policy." (*Id.* at p. 413.)

While "immediately" disabling, as in *Frenzer,* is arguably imprecise and thus open to varying interpretations, in *Schilk* v. *Benefit Trust Life Ins. Co.* (1969) 273 Cal.App.2d 302 [78 Cal.Rptr. 60, 39 A.L.R.3d 1019], the court considered a policy limiting recovery to total disability occurring within 20 days of the date of the accident. The disability did not totally manifest itself until five months after the occurrence of the accident. The carrier contended the plaintiff was estopped, under the time limitation of the policy, to assert his claim.

But the court "followed the process of nature rule that the disability is immediate within the meaning of a total disability provision when it follows directly from an accidental hurt within such time as the process of nature consumes in bringing the person affected to a state of total incapacity to perform any kind of work pertaining to his occupation." (*Id.* at p. 307.) Continued the court: "The insurer further argues that the words 'within twenty days from the date of the accident' are so plain and definite that they are not subject to construction. If so, then, the clause involved must be ignored under other well established rules, namely, that when the strict enforcement of a provision of an insurance policy will result in unreasonable and unjust forfeitures or an absurd result, the courts will refuse to enforce the strict meaning of the language of the policy. As noted above, serious internal injuries often do not manifest themselves until long after the accident happened and the injured person may be completely oblivious of his condition, although the process of nature may be actively engaged in developing the latent hurt into a severe or even fatal injury. The fact that respondent, under such circumstances, pursued his usual occupation and performed some or even all of his occupational duties ought not, in all fairness, militate against him when the more serious but hidden injury subsequently manifests itself.

"The strict interpretation of the clause here would lead to an unjust result [citation]. In addition, to give literal interpretation to the provision here in question would be to unreasonably restrict the coverage of the policy to a very small and minute number of instances of total disability resulting from accident, namely, only those that manifested themselves

within 20 days after the occurrence of the accident. Such a very limited and highly technical construction of an insurance contract cannot be foisted onto a layman nor does it make any sense in terms of the risks insured against . . . ." (*Id.* at pp. 307-308.)

This court unanimously denied a hearing in *Frenzer* in 1938 and in *Schilk* in 1969.

*Schilk* is clearly controlling in the instant case. Here there was a 30-day limitation, compared to the 20 days in the *Schilk* policy. There the plaintiff suffered a whiplash injury in an on-the-job accident; here plaintiff injured his leg in an automobile accident. There plaintiff was not totally disabled between the accident in September and February when the injury achieved its ultimate total effect, after expiration of the 20-day limitation; here plaintiff experienced leg tremors the day after the accident in February, numbness in April and diagnosis of multiple sclerosis in October, after expiration of the 30-day limitation. There plaintiff attempted to continue working as a carpenter after the accident until his disability became total; here plaintiff attempted to work as a real estate broker until his disability became total. There the court found that as a proximate result of the whiplash and "independently of any and all other causes" plaintiff became totally disabled; here the jury in a special verdict found that plaintiff's "disability resulted directly and independently of all other causes from the accident of February 11, 1966." It would be difficult to find two cases more factually comparable.

The first special verdict rendered by the jury is clear and unequivocal: "Do you find by a preponderance of the evidence that Mr. Willden's disability resulted directly and independently of all other causes from the accident of February 11, 1966? Answer: Yes." On the strength of that factual finding alone, plaintiff is entitled to recover.

The second special verdict rendered was: "Do you find by a preponderance of evidence that the injury suffered by the Plaintiff totally and continuously disabled him within thirty (30) days from the date of the accident so as to prevent him from performing each and every duty pertaining to his occupation? Answer: No." Under the *Schilk* doctrine, the query was irrelevant in the light of the finding in the first special verdict that the disability resulted directly from the accident. The addition of the words "totally and continuously" was of no significance

in view of the uncontradicted evidence that plaintiff suffers total, continuous and permanent disability from multiple sclerosis.

The jurors were then instructed that if the answer to the foregoing query was "No" they were "to return to the courtroom without answering further questions." The jury ignored the court's instructions and purported to answer two other proposed special verdicts. The trial judge should have ignored the responses rendered contrary to instructions. Or in the alternative, if he believed the additional verdicts recited ambiguous conclusions, his duty was to reinstruct the jurors and send them out for further deliberations.

Defendant contends there was no evidence submitted upon which a jury could find that plaintiff was totally disabled from "any occupation." The carrier refers consistently to "any occupation," by the use of quotation marks inferring that the expression is taken from the policy. The relevant section of the policy relating to occupational disability refers to a disabling injury "so as to prevent him from performing each and every duty pertaining to *his* occupation" (italics added), not *any* occupation. It would require very little evidence to sustain a claim that a multiple sclerosis victim cannot perform each and every duty required of him in the demanding occupation of real estate broker.

I do not subscribe to the majority's conclusion that the "harsh and arguably unconscionable application of the 30-day provision to bar plaintiff's claim in the present case is the result of plaintiff's failure to seek a jury instruction based upon the more liberal process of nature rule." Application of the limitation here is not arguably unconscionable, it *is* unconscionable as the majority themselves seem to recognize by quoting from Justice Taylor's *Schilk* opinion (fn. 6, *ante*). While it would have been preferable for plaintiff to have offered an instruction based upon *Schilk*, nevertheless the trial court had a duty to apply the prevailing law after the jury returned its first special verdict.

I would reverse the judgment.

Appellant's petition for a rehearing was denied January 19, 1977. Mosk, J., was of the opinion that the petition should be granted.