[Civ. No. 18579. Fourth Dist., Div. One. Jan. 23, 1980.]

MARIA TERESA MONTEZ, Plaintiff and Appellant, v.
FORD MOTOR COMPANY, Defendant and Respondent.

**COUNSEL**

John A. Marin, Anthony J. Battaglia and Irwin Zalkin for Plaintiff and Appellant.

Luce, Forward, Hamilton & Scripps, Robert G. Steiner, George S. Howard, Jr., and Mark C. Mazzarella for Defendant and Respondent.

**OPINION**

**WIENER, J.**—A plaintiff in an action for personal injuries in a products liability case is not required to elect whether to proceed on a theory of strict liability in tort or on a theory of negligence where the instructions on the two theories will not be confusing to the jury. (*Jiminez* v. *Sears, Roebuck & Co.* (1971) 4 Cal.3d 379, 387 [93 Cal.Rptr. 769, 482 P.2d 681, 52 A.L.R.3d 92].) At issue in this appeal

is whether the court's rejection of plaintiff's negligence instructions and its decision to instruct the jury solely on strict liability was prejudicial error. We conclude that in a non-res ipsa loquitur case involving a manufacturing defect only, the failure to follow *Jiminez* does not require reversal. We also explain that the court's error in failing to instruct on the products liability definition of "defect" was not prejudicial. We affirm the judgment.

## *Factual and Procedural Background*

On August 25, 1972, plaintiff Maria Teresa Montez was a passenger in a 1969 Ford Mustang being driven by Esther Perez (Perez). She was seriously injured when ejected from the car after the driver failed to negotiate a sharp curve on the highway near Tecate, Baja California, Mexico. The car came to rest 170 feet from the point where it left the paved road. Expert testimony established the car entered the curve at approximately 59 miles per hour; a comfortable speed to the curve would range from 17 to 27 miles per hour; an experienced driver driving a sportscar could manage the turn at about 34 miles per hour; the absolute maximum speed such a car could stay on the road throughout the curve was between 43 and 56 miles per hour. There was self-contradicting testimony by both the driver and plaintiff on the issue of whether the driver could turn the steering wheel when making the turn.

The 1969 Ford Mustang was equipped with a V-8 engine and power steering. At the time of the accident, the odometer showed almost 56,000 miles. The car was first purchased in June 1969 by Mr. and Mrs. Jones. They drove it approximately 23,000 miles before trading it in December 1970. On several occasions, they complained to the dealer of substantial vibration at speeds in excess of 65 miles per hour. Service visits proved unsuccessful, resulting in individual road tests by the service manager and the Ford district manager. They both concluded the vibration was due to the road surface. Mrs. Jones also found the steering to be stiff for power steering. The next owner was Richard Hatton, who drove it approximately 32,000 miles before he traded it for a "heavier" travel car in August 1972. Hatton, who had been an amateur race car driver, testified he had no problems with the car, noting the car steered perfectly and the brakes worked well. Later in August 1972, Mrs. Mendez bought the vehicle for her daughter, Esther Perez. Before this sale, the car was serviced by the dealer and it had passed a safety check by an independent contractor. The safety check included an inspection of the steering linkage, the fluid level in the steering gear box

and the play in the steering system. Mrs. Mendez testified she drove the car on the day she bought it; on the highway it vibrated and the steering would occasionally and momentarily tighten or lock.

Plaintiff's expert, Aaron Goldsmith, theorized a very hard object became wedged between the steering gears, thwarting the driver's efforts to turn the steering wheel and thus causing the accident. He opined that due to the vibration, an incipient crack in a steering gear tooth broke off or a foreign piece of metal inadvertently left inside the steering gear housing at time of manufacture, became lodged in the gear system.

Ford's product quality engineer, Robert E. Frey, testified as to defendant's procedures pertaining to the manufacture, inspection and testing of the steering gear and sector, specifically noting that each part of the steering assembly is 100 percent magnetic-particle inspected—an off-line, two- to three-minute examination by an individual which would reveal any discontinuity, crack or imperfection. Frey also noted a fractured tooth would be felt by the driver as a looseness in the steering wheel. In addition, he testified although vehicles are not road-tested after final assembly in the plant, they are driven from station to station within the assembly line by factory personnel and subjected to miscellaneous simulated tests.

The wreckage of the car was disposed of before defendant was served. However, Leon Dame, an insurance investigator for the driver's insurance company and a mechanical engineer, examined the wreckage after the accident. He testified he turned the steering wheel in each direction and found no apparent interference. He further noted that had a chipped tooth existed, or a foreign particle been present, he would have detected it.

In its special verdict, the jury found the vehicle was not defective. Judgment was entered accordingly. Plaintiff appeals.

*The Failure to Instruct on Negligence Was Not Error*

■ Plaintiff contends under *Jiminez* v. *Sears, Roebuck & Co., supra,* 4 Cal.3d 379, she was entitled to present her case to the jury on theories of both negligence and strict liability.

Strict products liability is a subtle tort doctrine containing nuances which effectively distinguish it from genuine strict liability. Strict liabil-

ity in the latter sense is equivalent to a compensation system which would render product manufacturers automatically liable for all accidents caused by their product. (See Prosser, *Strict Liability to the Consumer in California* (1966), 18 Hastings L.J. 9, 23; see generally, Schwartz, *Foreward: Understanding Products Liability* (1979) 67 Cal.L.Rev. 435, and at pp. 441-443.) In the tort context of products liability, a defect is required—something must be wrong with the product. In a case based on a manufacturing defect, immediate focus is on the product itself and not on the system that produced the product. (67 Cal.L.Rev., *supra*, at pp. 458, 493.) Thus, where the facts do not involve res ipsa loquitur and liability hinges on the manufacturing defect only, as are the facts in the present case, strict products liability is a shortcut to any recovery that might be based on negligence (*id.*, at p. 493). Unlike *Jiminez*, with its different facts and different theories of recovery, liability here either in strict liability or in negligence was required to be congruent.

*Jiminez* arose out of plaintiff's use of a step-ladder purchased from defendant retailer. Plaintiff testified he had used the ladder on only one occasion before the accident in an attempt to prune a peach tree. Finding the ground too muddy, he stopped. A few days later, he placed the ladder on the cement floor of his garage and climbed it in order to put some gifts in the attic. He stated he was standing on the next step to the top when the ladder broke and that he probably fell on it. Both parties presented expert testimony on whether the ladder was defective. In affirming the order granting the new trial, our high court explained the evidentiary record supported the possibility defendant could be found negligent for failure to warn purchasers that the ladder should not be used on soft ground (*id.*, at p. 384). The jury could have determined the ladder was not defective when sold, but nevertheless, have still found for plaintiff on his negligence theory. In addition, had the jury been instructed on the doctrine of res ipsa loquitur, it could have reasonably found that the ladder was negligently constructed or designed even though it may have rejected plaintiff's expert testimony on those issues (*id.*, at p. 386).

In the case before us, plaintiff concedes res ipsa loquitur does not apply. The sole issue turned on the alleged defect in the steering assembly of the vehicle. Plaintiff's evidence on her negligence theories focused on the breach of defendant's duty of care in the manufacture and assembly of the vehicle and its failure to detect and remedy the defect in response to owner-warranty complaints and inspections. Unlike *Jiminez*, a jury

determination of the nonexistence of any defect was fatal to the theory of recovery based on negligence or on strict liability. (*Greenland* v. *Ford Motor Company, Inc.* (1975) 115 N.H. 564 [347 A.2d 159, 163]; see also *Masi* v. *R. A. Jones Co.* (1978) 163 N.J.Sup. 292 [394 A.2d 888, 891].) Consequently, although instructions on the two theories would not have been necessarily confusing to the jury (*Jiminez* v. *Sears, Roebuck & Co., supra,* 4 Cal.3d at p. 387), they were not necessary. Instructions limited to strict products liability were sufficient.

### *The Court's Error in Failing to Instruct the Jury on the Definition of Defect Does Not Require Reversal*

■ Plaintiff also contends the court prejudicially erred in refusing to instruct on the definition of "defect."[1]

The court gave BAJI No. 9.00 (1977 rev.)—Products Liability—Strict Liability In Tort—as follows: "The manufacturer of an article is subject to liability for injuries proximately caused by a defect in the article which existed when the article left possession of the defendant, provided that the injury resulted from a use of the article that was reasonably foreseeable by the defendant." The court refused to give plaintiff's proffered instructions, BAJI No. 9.00.3—Products Liability—Strict Liability In Tort—Defect In Manufacture[2]—and a special instruction defining defect.[3]

---

[1]Plaintiff also argues for the first time on appeal in her reply brief that the jury should have been instructed that plaintiff was not required to prove the existence of a specific manufacturer's defect, but only required to establish that the accident was the result of a vehicle which was generally in a defective condition. Her failure to request amplification or proffer a specific and proper instruction on the cited matter—thus enabling the trial court to remedy any potential error—forecloses her from asserting this contention on appeal. (*Willden* v. *Washington Nat. Ins. Co.* (1976) 18 Cal.3d 631, 636, fn. 5 [135 Cal.Rptr. 69, 557 P.2d 501]; *Hyatt* v. *Sierra Boat Co.* (1978) 79 Cal.App.3d 325, 335 [145 Cal.Rptr. 47]; *Downing* v. *Barrett Mobile Home Transport, Inc.*(1974) 38 Cal.App.3d 519, 523 [113 Cal.Rptr. 277].) For, in a civil matter, the court has no duty to instruct on its own motion. (*Willden* v. *Washington Nat. Ins. Co., supra,* 18 Cal.3d at p. 636; *Downing* v. *Barrett Mobile Home Transport, Inc., supra.,* 38 Cal.App.3d at p. 523.)

[2]BAJI No. 9.00.3 reads: "The [manufacturer or retailer] of a product is liable for injuries a proximate cause of which was a defect in its manufacture which existed when it left possession of defendant[s], provided that the injury resulted from a use of the product that was reasonably foreseeable by the defendant[s].

"A defect in the manufacture of a product exists if the product differs from the manufacturer's intended result or if the product differs from apparently identical products from the same manufacturer."

[3]Plaintiff's special instruction defining defect was: "As used in these instructions, the term 'defect' is defined as follows: a defect in a product is a condition or feature of the

A trial court can properly and should in some cases attempt to assist the jury in their deliberation by correctly defining for the jurors terms employed within the instruction. (*Baker* v. *Chrysler Corp.* (1976) 55 Cal.App.3d 710, 715 [127 Cal.Rptr. 745].) A court instructs the jury on plaintiff's burden in establishing his products liability in a case based upon the theory of strict liability; it does not preclude it from "framing a definition of defect, appropriate to the circumstances of a particular case, to guide the jury as to the standard to be applied in determining whether a product is defective. . . ." (*Barker* v. *Lull Engineering Co.* (1978) 20 Cal.3d 413, 427 [143 Cal.Rptr. 225, 573 P.2d 443].)

Plaintiff's case was limited to a manufacturing defect. She did not rely on either a defect in design or the failure to warn. The facility in formulating a definition for the manufacturing defect as compared to a design defect, is evident in light of the subtleties involved within the contours of the design defect concept (*id.*, at pp. 417-418, 429). The meaning of a manufacturing defect may require little or no elaboration (*id.*, at p. 417), explaining generally that: "a manufacturing or production defect is readily identifiable because a defective product is one that differs from the manufacturer's intended result or from other ostensibly identical units of the same product line. For example, when a product comes off the assembly line in a substandard condition it has incurred a manufacturing defect. [Citation.]" (*Barker* v. *Lull Engineering Co., supra*, 20 Cal.3d at p. 429; see also *Cavers* v. *Cushman Motor Sales, Inc.* (1979) 95 Cal.App.3d 338, 346 [157 Cal.Rptr. 142].)

The second paragraph of BAJI No. 9.00.3 accurately incorporates the foregoing definition of a manufacturing defect.

When a party requests an instruction in support of a theory advanced by him, he is entitled to have the instruction given to the jury if supported by the evidence and in accord with applicable law. (*Hasson* v. *Ford Motor Co.* (1977) 19 Cal.3d 530, 543 [138 Cal.Rptr. 705, 564 P.2d 857]; *Titus* v. *Bethlehem Steel Corp.* (1979) 91 Cal.App.3d 372, 380 [154 Cal.Rptr. 122].) Accordingly, the court should have given BAJI No. 9.00.3 instead of BAJI No. 9.00 (see use note, BAJI No. 9.00.3, Cal.Jury Instns. (1979 pocket supp.) p. 11), as the jury would have been neither misled nor confused as a result of such instruction.

---

product resulting from workmanship, material or design used in its manufacture which makes the product unsafe for its intended use, or for any reasonably foreseeable use."

(See *Perry* v. *Schwartz* (1963) 219 Cal.App.2d 825, 829 [33 Cal.Rptr. 511]; 4 Witkin, Cal. Procedure (2d ed. 1971) Trial, § 193, p. 3013.)[4]

Plaintiff urges such failure to instruct constituted prejudicial error especially since the jury was presented only with circumstantial evidence of a defective product. However, we cannot find sufficient prejudice to plaintiff to warrant reversal as "a miscarriage of justice." (Cal. Const., art. VI, § 13.) Although the trial court upon request should have given BAJI No. 9.00.3 for more complete guidance, it is apparent from the factual record, the instruction given and the obvious nature of the alleged defect,[5] the jury was capable of determining whether a defect in fact existed based upon the evidence. Their conclusion that one did not exist is amply supported by the record.

### Disposition

Judgment affirmed.

Staniforth, Acting P. J., and Work, J.,* concurred.

Appellant's petition for a hearing by the Supreme Court was denied March 20, 1980.

---

[4]The special instruction was also inapplicable because it included matter pertaining to design defect not applicable to the instant controversy. (*Carlson, Collins, Gordon & Bold* v. *Barducci* (1967) 257 Cal.App.2d 212, 233 [64 Cal.Rptr. 915]; *Crooks* v. *Pirrone* (1964) 228 Cal.App.2d 549, 554 [39 Cal.Rptr. 622]; *Perry* v. *Schwartz, supra,* 219 Cal.App.2d at p. 829.)

[5]The broken gear tooth or foreign particle in the gear box, or in that manner, any malfunction in the steering assembly attributable to the time of manufacturing.

*Assigned by the Chairperson of the Judicial Council.