**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| JEFFREY L. WISSOT, DDS, an individual, | No. 13-56195 |
| Plaintiff - Appellant, | D.C. No. 2:11-cv-10040-RSWL-JCG |
| v. | |
| GREAT-WEST LIFE & ANNUITY INSURANCE COMPANY, a Colorado Corporation, | MEMORANDUM[*] |
| Defendant - Appellee. | |

Appeal from the United States District Court
for the Central District of California
Ronald S.W. Lew, Senior District Judge, Presiding

Argued and Submitted July 9, 2015
Pasadena, California

Before: W. FLETCHER, PAEZ, and BERZON, Circuit Judges.

Jeffrey Wissot appeals the district court's grant of summary judgment to

Great-West Life & Annuity Insurance Company regarding a disputed insurance

contract. The district court ruled that the contract's choice-of-law provisions

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

should be enforced and that Wissot's claim for benefits was predicated on an incorrect reading of the unambiguous contract. We affirm.

1. The contract's choice-of-law provision is enforceable. "In diversity cases, federal courts must apply the conflict-of-law principles of the forum state." *S.A. Empresa v. Boeing Co.*, 641 F.2d 746, 749 (9th Cir. 1981). Here, that means we enforce the contract's choice-of-law provision unless "the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties['] choice," or the "application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue." *Nedlloyd Lines B.V. v. Superior Court*, 3 Cal. 4th 459, 465 (1992) (quoting Restatement (Second) of Conflict of Laws §187 (1971)).

The parties do not contest that they have a substantial relationship to Illinois, the chosen state indicated by the contract. The process-of-nature rule, the only law Wissot identifies as conflicting with Illinois' law, does not meet the criteria for "fundamental policy," at least as applied to this case.

"[A] fundamental policy may be embodied in a statute which makes one or more kinds of contracts illegal or which is designed to protect a person against the oppressive use of superior bargaining power. Statutes involving the rights of an

2

individual insured as against an insurance company are an example of this sort." Restatement (Second) of Conflict of Laws § 187 cmt. g. California courts have, on many occasions, looked to legislative enactments for expressions of "strong public policy." *See, e.g.*, *Application Grp., Inc. v. Hunter Grp., Inc.*, 61 Cal. App. 4th 881, 900 (1998); *1800-Got-Junk? LLC v. Superior Court*, 189 Cal. App. 4th 500, 515 (2010); *Brack v. Omni Loan Co.*, 164 Cal. App. 4th 1312, 1323-24 (2008). But the "process of nature" rule is not established in statute; it has its origins in "judicial decision in other states." *Willden v. Wash. Nat. Ins. Co.*, 18 Cal. 3d 631, 635 (1976).

Moreover, while the process-of-nature rule may protect some parties against those with superior bargaining power, the strength of this consideration is attenuated in the context of a group insurance plan, where the parties are on a more even footing. *See* Restatement (Second) of Conflict of Laws § 192 cmt. h. Further, the process-of-nature rule has been applied only to contracts that set an arbitrary time period within which an accident or sickness must manifest as a disability. *See, e.g.*, *Willden*, 18 Cal. 3d at 635. Wissot's contract, in contrast, does not require that his disability arise within any particular time period after an accident, but rather that his disability arise before a certain age. Such a provision is not simply a procedural barrier; it has a substantive rationale, as it allows for

3

greater benefits to accrue to those who are removed from the workforce earlier in life. As the provision here at issue has a rationale not suggestive of "oppressive use of superior bargaining power," Restatement (Second) of Conflict of Laws § 187 cmt. g, application of the process-of-nature rule to this circumstance would not implicate the "fundamental policy" of protecting insureds from arbitrary, unjustified policy provisions.

Finally, even if the process-of-nature rule were a fundamental policy and applied here, the choice-of-law provision is still enforceable. California does not have a materially greater interest in the determination of this issue than Illinois. *See Nedlloyd,* 3 Cal.4th at 466. California has an interest in promoting party autonomy, *id.* at 484 (Kennard, J., concuring in part), and so has adopted "a strong policy favoring enforcement" of choice-of-law provisions. *Id.* at 465 (majority opinion). In addition, as noted, California's interest in enforcing the "process of nature" rule is attenuated in the present case. Further, the policy that Wissot purchased is the product of negotiations between two sophisticated parties: the American Dental Association, which is headquartered in Illinois, and Great-West. As a result, California's interest in applying the "process of nature rule" in this case is not greater than the combined weight of California's interest in enforcing choice-of-law provisions generally and Illinois's interest in seeing its substantive

law applied to a contract entered into in Illinois by an entity domiciled in Illinois. The district court was therefore correct in applying Illinois law in accordance with the contract's provision.

2. The contract's terms are unambiguous. "Ambiguity can be found only if the contract language is 'reasonably or fairly susceptible of more than one construction.'" *Interim Health Care of N. Ill., Inc. v. Interim Health Care, Inc.*, 225 F.3d 876, 879 (7th Cir. 2000) (quoting *A.A. Conte, Inc. v. Campbell–Lowrie–Lautermilch Corp.*, 477 N.E.2d 30, 33 (Ill. 1985)).

Out of the context of this disability policy, one could possibly read "[f]or a Total Disability due to accident or sickness which begins before the member reaches age 50" in the way Wissot suggests. But the policy itself defines accident as a "sudden" event that "is definite as to time and place." In this policy, an "accident" does not stretch out over time, so it could not "begin" before a member reaches 50 and continue after that. Sudden, discrete events "happen" or "occur;" the word "begins," in contrast, more naturally refers to a continuing event — such as a disability.

Construing the phrase "begins" to modify "[t]otal [d]isability" thus results in a reading that is "ordinary and natural," *Interim Health Care*, 225 F.3d at 879, while reading it to modify "accident or sickness" does not. The examples Wissot

5

furnishes, in which "begins" modifies "accident," are from unrelated contexts where the word "accident" would have a different connotation.

Also, even if the disputed language could reasonably be construed in Wissot's favor when read in isolation, such a construction breaks down when we "construe the policy as a whole with due regard to the risk undertaken, the subject matter that is insured, and the purposes of the entire contract." *Indiana Ins. Co. v. Pana Community Unit School Dist. No. 8*, 314 F.3d 895, 900 (7th Cir. 2002) (citing *Zurich Ins. Co. v. Raymark Indus.*, 514 N.E.2d 150 (Ill. 1987)); *see also Pekin Ins. Co. v. Wilson*, 930 N.E.2d 379, 386 (Ill. App. Ct. 2009). The contract at issue is an insurance contract designed to replace income lost in the event of disability that renders the policy holder unable to earn income. Plan II in particular provides supplemental income benefits to dentists disabled in their prime earning years. The focus is thus on whether the policyholder was *disabled*, and so not able to earn income during his prime earning years, not on whether he suffered an injury or sickness but could still work. The possible ambiguity raised by reading the text in isolation thus diminishes when the contract's overall structure is considered.

The contract's broader context also clarifies why the disputed text contains language that could generate ambiguity when read in isolation. The Basic Plan

makes a distinction between disability due to accident and disability due to sickness—the maximum payment period for the former is five years, whereas it is only two years for the latter. The phrase "due to accident or sickness" in the caption of Plan II clarifies that, unlike for the Basic Plan, the same benefits are available regardless of whether the cause is sickness or accident.

While there is a general principle of construing insurance contracts in favor of beneficiaries, "the rule of liberal construction in favor of the insured is a rule of last resort which must not be permitted to frustrate the intention the parties have expressed, if that can otherwise be ascertained." *Schuchman v. State Auto Prop. & Cas. Ins. Co.*, 733 F.3d 231, 238 (7th Cir. 2013) (citing 16 *Williston on Contracts* § 49:16 (4th ed.)). The rule applies "only if the language of the policy is ambiguous after application of other principles or canons of interpretation." *Id.* Here, in light of the policy as a whole, the optional insurance provision can only reasonably be read to provide benefits to those whose inability to earn income began at a younger age, not those whose accidents occurred at a younger age but who continued to work until after turning 50. The contract is thus not ambiguous.

**AFFIRMED.**