**Mildred CRANMORE, Plaintiff,**

**v.**

**UNUMPROVIDENT CORPORATION; Colonial Life and Accident Insurance Company, Defendants.**

No. CV–S–03–1079–PMP (RJJ).

United States District Court, D. Nevada.

April 10, 2006.

Steven J. Parsons, Law Office of Steven J. Parsons, Las Vegas, NV, for Plaintiff.

Ann–Martha Andrews, Jason Kerr, Lewis & Roca, LLP, Las Vegas, NV, Thomas Klinkel, Lewis & Roca, LLP, Tucson, AZ, for Defendants.

## ORDER

PRO, Chief Judge.

Presently before the Court is Defendants UnumProvident Corporation ("UnumProvident") and Colonial Life and Accident Insurance Company's ("Colonial") Motion for Summary Judgment (Doc. # 31) filed on November 16, 2005. Defendants filed a Supplement to Motion for Summary Judgment (Doc. # 32) on December 2, 2005. Plaintiff Mildred Cranmore ("Cranmore") filed Plaintiff Mildred Cranmore's Opposition to Defendant UnumProvident Corporation and Colonial Life and Accident Insurance Company's Motion for Summary Judgment (Doc. # 19) on December 22, 2005. Defendants filed a Reply in Support of Motion for Summary Judgment and Objection to Inadmissible Evidence (Doc. # 38) on January 26, 2006.

## I. BACKGROUND

From 1988 to 2002, Plaintiff Cranmore was an employee of the Gordon Gaming Group, d/b/a the Sahara Hotel and Casino ("Sahara"). (Pl.'s Opp'n to Defs.' Mot. for Determination That ERISA Applies ("Pl.'s Opp'n") [Doc. # 19], Ex. A at 7–8, 30–31.) In 1992, Cranmore purchased accident, sickness, and cancer insurance policies from Colonial, and authorized direct payroll deductions from her Sahara paycheck to cover the premiums. (Pl.'s Opp'n, Ex. A at 9–10, Ex. 1, Ex. 2; Mot. for Determination that ERISA Applies [Doc. 317], Ex. 2 ¶ 3; Mot. for Summ. J. [Doc. # 31], Felicia Robinson Decl., Exs. A, B.) The

accident policy provides that it will pay benefits if the insured is injured in an accident which causes the insured to "become totally disabled within ninety days after the accident." (Mot. for Summ. J., Felicia Robinson Decl., Ex. A at COLSP00012.) The policy defines "totally disabled" as "you are unable to work at your job for pay or benefits and are under the care of a doctor." (*Id.*) The policy further provides coverage for recurring total disability:

> If we pay benefits for a period of total disability, and you become totally disabled again because of the same injury within six months after you return to work, we will treat this disability as the same disability. This means that the length of time shown for Total Disability (accident) in the Policy Schedule will not start over as it will for disabilities caused by different covered accidents.

(*Id.*) The policy provided coverage for total disability in the amount of $600 per month for twelve months. (*Id.* at COLSP00005.)

In December 1999, Cranmore was in an automobile accident. (Compl. ¶ 8; Answer ¶ 8.) Due to her injuries from the accident, Cranmore missed work at the Sahara from December 18 to December 24, 1999. (Mot. for Summ. J., Felicia Robinson Decl., Ex. E at COLCR00164.) Cranmore thereafter returned to full time work at the Sahara as a security guard. (Mot. for Summ. J., Felicia Robinson Decl., Ex. F at 27.) On January 31, 2000, Sahara transferred Cranmore to a position as a PBX operator. (Reply in Supp. of Mot. for Summ. J. ("Reply") [Doc. # 38], Exs. I, J.) Cranmore testified at her deposition that her transfer was due to her inability to walk for the security position. (Mot. for Summ. J., Felicia Robinson Decl., Ex. F at 27–28). The transfer request form Cranmore filled out with the Sahara did not indicate the reason for the requested job transfer. (Reply,

Ex. J.) The Sahara's personnel action form indicates the reason for the transfer was an "upgrade." (Reply, Ex. I.) The personnel action form does not indicate the transfer was related to any disability, injury, or health reason. (*Id.*)

Cranmore continued to work full time from January 2000 to April 2001 as a PBX operator. (Mot. for Summ. J., Felicia Robinson Decl., Ex. F at 27.) Although she worked full time, Cranmore continued to be treated for her back pain from the time of the accident to at least May 2002. (Pl. Mildred Cranmore's Opp'n to Def. UnumProvident Corp. and Colonial Life & Accident Ins. Co.'s Mot. for Summ. J. ("Pl.'s Opp'n to Mot. for Summ. J."), Ex. 1 at COLCR00033–41, COLCR00167, COLCR00174, COLCR00180, COLCR00182–86, COLCR00196–200, COLCR00220–32, COLCR00266, COLCR00269–70, COLCR00303, COLCR00317–40, COLCR00355–59, COLCR00379–82, COLCR00387; Reply, Exs. K, L.)

On May 10, 2001, Cranmore filed a claim for total disability benefits under her sickness policy with Colonial. (Mot. for Summ. J., Felicia Robinson Decl., Ex. C at COLCR00002.) According to the claim form, Cranmore suffered from chronic obstructive pulmonary disease ("COPD") and had been unable to work since April 14, 2001. (*Id.*) Cranmore did not return to work after April 14, 2001. (Mot. for Summ. J., Felicia Robinson Decl., Ex. F at 10, 43.) Colonial paid twelve months of total disability payments under Cranmore's sickness policy in the amount of $7,200. (Mot. for Summ. J., Felicia Robinson Decl., Ex. C at COLCR00057.)

In June 2001, Cranmore applied for total disability benefits under her Colonial accident policy for the period from December 18 to December 24, 1999 when she missed work due to the accident. (Mot. for

Summ. J., Felicia Robinson Decl., Ex. E at COLCR00164.) Colonial paid Cranmore total disability benefits for these days under the accident policy in the amount of $260.82. (*Id.* at COLCR00533.)

As her disability benefits expired under her sickness policy, Cranmore filed a new claim with Colonial under her sickness policy in May 2002 for total disability due to "CHF—Osteoperosis." (Mot. for Summ. J., Felicia Robinson Decl., Ex. C at COLCR00022.) Colonial denied the claim, asserting Cranmore's new claim of congestive heart failure was related to her COPD, and thus Colonial had paid the maximum benefits allowable under the sickness policy. (*Id.* at COLCR00057–58, COLCR00060.)

Thereafter, Cranmore made a claim for total disability under her accident policy from the period of April 2001 forward. (Compl. ¶ 9; Answer ¶ 9.) Colonial denied Cranmore's claim under the accident policy. (Pl.'s Opp'n to Mot. for Summ. J., Ex. 1 at COLCR00058.) On September 27, 2002, Cranmore, through her attorney, sent Colonial a letter explaining that she was permanently disabled by her back injuries sustained in the accident. (*Id.* at COLCR00348.) Cranmore noted that although the policy states disability must commence within ninety days after the accident, the "Process of Nature Rule . . . would bring her recurrent 2001 disability within coverage." [1] (*Id.*) Colonial responded on October 11, 2002, and again denied the claim. (*Id.* at COLCR00346.) Colonial noted that it had paid for the five days of total disability in December 1999, but had not been aware that Cranmore was totally disabled from the accident any time

thereafter. (*Id.*) Colonial requested a disability statement from Cranmore's doctor and employer supporting the claim. (*Id.*)

Cranmore responded in a December 3, 2002 letter. (*Id.* at COLCR00343–45.) Cranmore asserted the December 1999 accident caused her recurrent total disability as of April 2001 when Cranmore ceased working. (*Id.* at COLCR00343.) Cranmore asserted that although her other illnesses were totally disabling, her back injury also was disabling even in the absence of her other illness. (*Id.*) Cranmore provided medical documentation showing her treatment for back pain dating from January 2000 to March 2002. (*Id.* at COLCR00344–45.)

Colonial denied the claim again on January 6, 2003. (*Id.* at COLCR00394–95.) Colonial noted that because Cranmore's total disability did not recur within six months of her original disability from the accident, the accident policy did not cover her claim. (*Id.* at COLCR00394.) Colonial also stated that although this injury may have qualified for benefits under Cranmore's separate sickness policy, Colonial already had paid her the maximum total disability benefits under this policy for the same time period due to Cranmore's disability from COPD. (*Id.* at COLCR00395.)

Cranmore brought suit in this Court based on diversity jurisdiction, alleging state law breach of contract, breach of the duty of good faith and fair dealing, and breach of statutory duties. (Compl. ¶¶ 12–31.) The parties disputed whether the Colonial policy was covered by ERISA or

---

1. As one court has described it, the process of nature rule provides that where policy provisions require disability within a specified time after an accident, "the onset of disability relates back to the time of the accident itself whenever the disability arises directly from the accident within such time as the process of nature consumes in bringing the person affected to a state of total disability." *Willden v. Wash. Nat'l Ins. Co.*, 18 Cal.3d 631, 135 Cal.Rptr. 69, 557 P.2d 501, 504 (1976).

was a private insurance contract between Cranmore and Colonial. After briefing on the issue, the Court determined ERISA does not govern the accident policy. (Order [Doc. # 25] dated February 7, 2005.)

Colonial now moves for summary judgment, arguing no genuine issue of material fact remains that Colonial did not breach the insurance contract because Cranmore's disability claim does not meet the policy's requirements. Colonial does not dispute that Cranmore was totally disabled within ninety days of the accident as required under the policy. However, Colonial argues Cranmore's recurrent disability did not manifest until over a year and a half later, and under the policy, a disability must recur within six months to be covered as part of the same accident. Additionally, Colonial argues Nevada does not apply the "process of nature" rule, and even if it did, it would not apply the rule to an unambiguous policy like the accident policy. Colonial also asserts summary judgment is warranted with respect to Plaintiff's bad faith and statutory violation claims because Colonial did not breach the contract and reasonably denied Cranmore's claims. Finally, Colonial argues no evidence in the record supports punitive damages.

Cranmore responds that she was totally disabled within ninety days of the accident, as proven by the claim Colonial paid when Cranmore was off work from December 18 to December 24, 1999. Cranmore argues she was unable to continue her work as a security officer due to her disability, and thus she was no longer able to work at her job within the policy's meaning. Cranmore also argues that her disability was recurrent. According to Cranmore, the policy provides that if a disability recurs within six months it is part of the same accident, and Colonial aggregates the benefits for a total of one year of payments.

However, Cranmore asserts that a disability that recurs more than six months after an earlier accident becomes a new accident entitling the policyholder to a new twelve month period of payments. Cranmore also asserts the process of nature rule governs her claim because Nevada would follow California law and adopt the rule. Cranmore asserts that under the process of nature rule, her disability dates back to the accident even though it took a year and a half to bring her to a recurrent state of total disability. Finally, Cranmore asserts the evidence supports a finding of bad faith because Colonial ignored its own policy of liberally construing time limitations to maximize payment to claimants.

## II. OBJECTION TO EVIDENCE

Exhibit 5 to Plaintiff's opposition appears to be a Colonial sales brochure for its insurance policies. Defendants object to Exhibit 5, asserting it is unauthenticated because the only authentication is counsel's statement that it is a sales brochure Defendants gave to Plaintiff. Defendants assert Plaintiff's counsel would not have personal knowledge to authenticate this exhibit. Plaintiff has not responded to the objection.

 Documents which are not properly authenticated cannot support a summary judgment motion. *See Cristobal v. Siegel*, 26 F.3d 1488, 1494 (9th Cir.1994) (citing *Canada v. Blain's Helicopters, Inc.*, 831 F.2d 920, 925 (9th Cir.1987)). "Authentication is a condition precedent to admissibility, and this condition is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir.2002) (citing Fed.R.Evid. 901(a) (quotation and footnote omitted)). The decision to exclude evidence lies within the district court's discretion. *Id.*

█ The proponent of evidence must make a prima facie showing of authenticity such that a reasonable juror could find in favor of authenticity. *U.S. v. Chu Kong Yin,* 935 F.2d 990, 996 (9th Cir.1991). Pursuant to Federal Rule of Civil Procedure 56(e), documents authenticated through personal knowledge must be "attached to an affidavit that meets the requirements of [Fed.R.Civ.P.] 56(e) and the affiant must be a person through whom the exhibits could be admitted into evidence." *Orr,* 285 F.3d at 774 (quotation omitted). A party also may authenticate an exhibit by any means listed in Federal Rules of Evidence 901(b) and 902. *See* Fed.R.Evid. 901(b) (providing ten approaches to authentication such as voice identification, public records, data compilations, nonexpert opinions on handwriting, and distinctive characteristics); Fed. R.Evid. 902 (self-authenticating evidence such as public documents under seal, certified copies of public records, newspapers, and acknowledged documents). Additionally, a party may authenticate an exhibit through other means that establish a prima facie showing of authenticity such that a reasonable juror could find in favor of authenticity, such as judicial notice. *See* Fed.R.Evid. 201.

█ Plaintiff has not properly authenticated Exhibit 5. Counsel is not a witness through whom the exhibit could be introduced at trial. Counsel has not indicated how he would have personal knowledge that Exhibit 5 is a sales brochure Defendants provided to Plaintiff. The Court therefore will not consider Exhibit 5 on summary judgment.

## III. MOTION FOR SUMMARY JUDGMENT

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, to-gether with the affidavits, if any" demonstrate "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The substantive law defines which facts are material. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). All justifiable inferences must be viewed in the light most favorable to the non-moving party. *County of Tuolumne v. Sonora Cmty. Hosp.,* 236 F.3d 1148, 1154 (9th Cir.2001).

The party moving for summary judgment bears the initial burden of showing the absence of a genuine issue of material fact. *Fairbank v. Wunderman Cato Johnson,* 212 F.3d 528, 531 (9th Cir.2000). The burden then shifts to the non-moving party to go beyond the pleadings and set forth specific facts demonstrating there is a genuine issue for trial. *Id.; Far Out Prods., Inc. v. Oskar,* 247 F.3d 986, 997 (9th Cir. 2001).

## A. Breach of Contract

█ In Nevada, courts must enforce insurance contracts as written to effectuate the parties' intent unless doing so will violate public policy. *Farmers Ins. Exch. v. Neal,* 119 Nev. 62, 64 P.3d 472, 473 (2003); *Nelson v. Cal. State Auto. Ass'n Inter–Ins. Bureau,* 114 Nev. 345, 956 P.2d 803, 805 (1998). Nevada courts view the policy's language "from the perspective of one not trained in law and give plain and ordinary meaning to the terms." *Farmers Ins. Exch.,* 64 P.3d at 472 (quotations omitted). Because an insurance policy is a contract of adhesion, courts broadly interpret the policy's language to afford the insured the greatest possible coverage. *United Nat'l Ins. Co. v. Frontier Ins. Co., Inc.,* 120 Nev. 678, 99 P.3d 1153, 1156–57 (2004). "An insurance policy may restrict coverage only if the policy's language

clearly and distinctly communicates to the insured the nature of the limitation." *Id.* (quotation omitted). Nevada construes any ambiguity or uncertainty in an insurance policy against the insurer and in favor of the insured. *Id.* However, Nevada courts will not rewrite unambiguous provisions or increase the insurer's obligation to the insured where the parties intentionally and unambiguously limited coverage. *Id.* at 1157. "The question of whether an insurance policy is ambiguous turns on whether it creates reasonable expectations of coverage as drafted." *Id.*

The parties agree Cranmore was totally disabled within the accident policy's meaning for one week in December 1999. The parties dispute whether Cranmore thereafter was totally disabled either in January 2000 when she left her job as a security officer or in April 2001 when she ceased working in any occupation.

### 1. January 2000—Cranmore's Job Transfer

Plaintiff argues she became totally disabled in January 2000 when she had to transfer from her job as a security officer to a PBX operator because her injuries from the accident made intolerable the walking involved in the security officer position. Plaintiff argues that because she was unable to work as a security officer in January 2000, she was unable to work at her job within the policy terms. Plaintiff thus asserts she was totally disabled as of January 2000, which is within ninety days from the accident and within the policy's coverage.

Defendants respond that Plaintiff raised this basis for total disability for the first time in her opposition to the motion for summary judgment. Defendants note that at no time during the claims process did Plaintiff identify that she was disabled in January 2000 as evidenced by her job transfer. Defendants also assert the only evidence the transfer was due to her injuries is Plaintiff's own deposition testimony. The job transfer request and approval do not mention disability or health reasons, and instead indicate the job transfer was an upgraded position for Plaintiff. Defendants also note that they requested Plaintiff provide Defendants with information from her employer and physicians supporting any accident disability claim, and Plaintiff did not provide any statement from her employer or doctors indicating her disability from the accident began in January 2000 upon her job transfer.

The accident policy provides that it will pay benefits if the insured is injured in an accident which causes the insured to "become totally disabled within ninety days after the accident." (Mot. Summ. J., Felicia Robinson Decl., Ex. A at COLSP00012.) The policy defines "totally disabled" to mean "you are unable to work at your job for pay or benefits and are under the care of a doctor." (*Id.*)

Plaintiff has not raised a genuine issue of material fact that Defendants breached the contract by denying a claim for total disability benefits dating from January 2000. Plaintiff undisputably was disabled in December 1999, but she did not file a claim for disability benefits under the accident policy until June 2001, after she ceased working at the Sahara. On that claim form, she indicated the only dates she was disabled due to the accident were December 18 to December 24, 1999. Her employer verified on the claim form that those were the days Plaintiff missed work due to her injuries from the accident. Thus, although Plaintiff now asserts she had been totally disabled since January 2000, in June 2001 she indicated she was disabled only for a few days in December 1999.

The Sahara's documentation regarding Plaintiff's job transfer does not mention disability or injury as the reason for the transfer. Plaintiff has presented no medical evidence that her injuries precluded her form performing her work as a security officer in January 2000. Plaintiff's testimony indicates she was having difficulty doing a lot of walking, but she still worked an eight-hour day as a security officer. Plaintiff has not presented medical or employment evidence that she was unable to work at her job as a security officer due to injuries she sustained in the accident. The record does not reflect that Plaintiff has presented a claim to Defendants supported by documentary evidence that she was totally disabled as of January 2000 when she transferred jobs from a security officer to a PBX operator or that Defendants denied such a properly supported claim. The Court therefore will grant Defendants' motion for summary judgment that it did not breach the insurance contract by not paying Plaintiff benefits under the accident policy from January 2000.

### 2. April 2001—Cranmore Ceases Working

Plaintiff offers two theories entitling her to coverage commencing in April 2001. First, Plaintiff argues that the policy's terms provide that a disability which recurs more than six months after the original accident is a new accident qualifying the insured for a new twelve-month benefit period. Second, Plaintiff argues Nevada would recognize the process of nature rule and would find her recurrent disability was covered by the policy because it took a year and a half for the process of nature to render her totally disabled from the accident.

### a. Recurrent Disability Beyond Six Months

Plaintiff asserts that the policy limits a recurrent disability within six months of the accident to the same benefits period of twelve months. However, Plaintiff argues when the disability recurs more than six months after the accident, the onset of the disability is a new accident entitling the insured to a full twelve-month disability period under the policy. Defendants assert that the policy does not cover a recurrent disability beyond the six-month period unless it is caused by a new and different accident.

The policy describes coverage for recurring total disability as follows:

> If we pay benefits for a period of total disability, and you become totally disabled again because of the same injury within six months after you return to work, we will treat this disability as the same disability. This means that the length of time shown for Total Disability (accident) in the Policy Schedule will not start over as it will for disabilities caused by different covered accidents.

(Mot. for Summ. J., Felicia Robinson Decl., Ex. A at COLSP00012.) The policy states an injury is "a wound to your body which is caused solely by or is the result of a covered accident." (*Id.* at COLSP00003.) A "covered accident" is an accident which "occurs after the effective date of this policy . . . while this policy is in force and is not excluded by specific description in this policy." (*Id.*)

 Under a plain reading of this policy language, and giving the terms their ordinary meaning, the policy does not cover a recurrent disability beyond six months unless it is caused by a different covered accident. The policy explains that if the insured becomes disabled within six months for the "same" injury, the insurer will treat the disability as the same disability subject to the same twelve-month benefit period. The policy further explains

that this means the disability period will not start over as it would for a new disability caused by a different accident. The policy language thus provides two options for coverage: a recurrent disability within six months, or an injury caused by a different covered accident. A plain reading of the policy does not suggest that a recurrent disability is "an accident" in and of itself. Rather, recurrent disability is an injury which is caused by an accident.[2] Plaintiff therefore was not entitled to a new twelve-month benefit period upon her recurrent disability under the policy's plain terms.

### b. The Process of Nature Rule

Plaintiff asserts Nevada would recognize the process of nature rule and extend coverage under the policy to disabilities which recur beyond the six-month deadline where the injury occurs while the policy is in effect, but the natural course of the injury does not disable the individual until the deadline set forth in the policy has expired. Plaintiff asserts that is what occurred here, because she was injured and disabled in December 1999, but the injury did not completely disable her again until April 2001. Defendants assert Nevada would not adopt the process of nature rule, and even if it did, it would not apply the rule here. Defendants contend courts have used the rule to interpret ambiguous policy terms that required the insured to be disabled "immediately," but that Nevada would not apply the rule to an unambiguous policy such as this one which specifically limits recurrent disability to six

months from the date of the original accident.

█ The "process of nature" rule provides that "within the meaning of policy provisions requiring disability within a specified time after the accident, the onset of disability relates back to the time of the accident itself whenever the disability arises directly from the accident 'within such time as the process of nature consumes in bringing the person affected to a state of total (disability).'" *Willden v. Wash. Nat'l Ins. Co.*, 18 Cal.3d 631, 135 Cal.Rptr. 69, 557 P.2d 501, 503–04 (1976) (quoting *Schilk v. Benefit Trust Life Ins. Co.*, 273 Cal.App.2d 302, 307–08, 78 Cal. Rptr. 60 (Cal.App. 1 Dist.1969)). The process of nature rule arose out of judicial decisions interpreting policy provisions limiting benefits to injuries which are "immediately" disabling. *See id.* (citing *Frenzer v. Mut. Benefit Health & Accident Ass'n*, 27 Cal.App.2d 406, 81 P.2d 197 (Cal. App. 3 Dist.1938)). In adopting the rule, courts have noted that the human body does not act on a precise timetable in responding to injuries:

> We think it may be said to be a matter of common knowledge that in a great many, perhaps in a large majority of, instances in which bodily injuries are received, the real nature and extent of said injuries do not reveal themselves until a greater or less time in the future and after the first pains from the hurt shall have passed away. The injured part often lies dormant for an indefinite period, with but little or no consciousness of its existence by the person injured, although from the very moment

**2.** *Cf. Grover C. Dils Med. Ctr. v. Menditto,* 112 P.3d 1093, 1095, 1099 (Nev.2005) (distinguishing under workers' compensation law the difference between an "aggravation" and a "recurrence," and stating that an aggravation is "the result of a specific, intervening work-related trauma, amounting to an 'injury'

or 'accident' under workers' compensation law, that independently contributes to the subsequent disabling condition," whereas a recurrence occurs "when no specific incident can independently explain the worsened condition").

of the accident, perhaps, the processes of nature may be busily engaged in developing what may have seemed to be but a slight hurt into a most serious and perhaps fatal injury. In such a case it cannot be said that the injury is not continuous and from the date of the accident, nor can it fairly or justly be said that the disability is not continuous and from the date of the accident, because the injured party enjoys a brief respite from pain and suffering, only to be endured to a greater degree when perverted nature again asserts itself.

*Rathbun v. Globe Indem. Co.,* 107 Neb. 18, 184 N.W. 903, 908 (1921).

Some jurisdictions have limited the process of nature rule to policies which contain ambiguous provisions such as requiring the insured to be "immediately" disabled, and decline to apply the rule to policies which require the insured to be totally disabled within a specified period of time. *See Hawes v. Kansas Farm Bureau,* 238 Kan. 404, 710 P.2d 1312, 1320 (1985) (stating process of nature rule was designed to interpret ambiguous policy terms and did not apply where policy limited coverage to disability incurred within ninety days from accident); *Nelson v. Combined Ins. Co. of Am.,* 155 Mont. 105, 467 P.2d 707, 712 (1970). These jurisdictions uphold the time limitation as an unambiguous, reasonable provision aimed at minimizing uncertainty as to the cause of the insured's death or disability. *Hawes,* 710 P.2d at 1320; *Nelson,* 467 P.2d at 712. Further, the time limitation provision assists an insurance company in setting policy rates based on the risks of recovery. *Hawes,* 710 P.2d at 1318.

In contrast, other jurisdictions have applied the rule even where the policy contains a clause limiting coverage to injuries which disable the insured within a specific number of days from the accident. For example, in *Schilk,* California applied the process of nature rule to a policy that contained a provision limiting coverage to a disability occurring within twenty days of the accident. *Schilk,* 273 Cal.App.2d at 307, 78 Cal.Rptr. 60. The court saw "no distinction" between a provision using the word "immediately" and a provision with a specific time limitation: "The reasoning applied to the word 'immediately' ... has equal force when the language of a policy provides a specific number of days, as here." *Id.* at 307, 78 Cal.Rptr. 60; *see also Murphy v. Travelers Ins. Co.,* 141 Neb. 41, 2 N.W.2d 576, 581 (1942) ("We think the reasoning applied when the word 'immediate' was used in the policy has equal force when the words 'date of accident' and 'within thirty days from date of accident' are employed."). Because serious injuries often do not manifest until long after an accident, the California court concluded that the insured's ability to work should not deprive him of coverage when the previously-hidden injury ultimately disables the insured. *Schilk,* 273 Cal.App.2d at 307–08, 78 Cal.Rptr. 60. The court thus concluded that strictly interpreting the time limitation in the policy under such circumstances would lead to an unjust result and would restrict unreasonably the policy's coverage to a small number of disabilities. *Id.* at 308, 78 Cal.Rptr. 60. "Such a very limited and highly technical construction of an insurance contract cannot be foisted onto a layman nor does it make any sense in terms of the risks insured against." *Id.*

Nevada has not expressly adopted or rejected the process of nature rule. If a state has not addressed a particular issue, a federal court must use its best judgment to predict how the highest state court would resolve it "using intermediate appellate court decisions, decisions from

other jurisdictions, statutes, treatises, and restatements as guidance." *Strother v. S. Cal. Permanente Med. Group*, 79 F.3d 859, 865 (9th Cir.1996) (quotation omitted); *Med. Lab. Mgmt. Consultants v. Am. Broad. Cos., Inc.*, 306 F.3d 806, 812 (9th Cir.2002). In making that prediction, federal courts look to existing state law without predicting potential changes in that law. *Moore v. R.G. Indus., Inc.*, 789 F.2d 1326, 1327 (9th Cir.1986). Although federal courts should not predict changes in a state's law, they "are not precluded from affording relief simply because neither the state Supreme Court nor the state legislature has enunciated a clear rule governing a particular type of controversy." *Air–Sea Forwarders, Inc. v. Air Asia Co., Ltd.*, 880 F.2d 176, 186 (9th Cir.1989) (quotation omitted).

 The Court concludes Nevada would adopt the process of nature rule and apply it to the policy in this case even though the policy contains an express time limitation. As this Court previously stated in *McClure v. Life Insurance Company of North America*, CV–S–92–063–PMP (LRL):

To hold otherwise, this Court would have to assume that the Nevada Courts would adopt a policy of blanket release from liability of all insurers of accident disability policies who set arbitrary time limits for the presentation of claims. Such a blanket release would apply even in cases where the claimant can prove that the total disability followed directly from the accidental injury within such time as the processes of nature take to bring the person to a state of total incapacitation.

This Court is not unmindful of the problems of proving causation in cases of delayed onset of disability; however, the legal community has had long experience in the proof of causation in fact.

Disputes of this nature are appropriately the province of the fact finder. (Order [Doc. # 21], *McClure v. Life Ins. Co. of N. Am.*, CV–S–92–063–PMP (LRL).) The process of nature rule avoids unjust and unreasonable results contrary to the insured's ordinary expectations. Further, not applying the rule creates perverse incentives by encouraging insureds to stop work immediately after an accident and to overstate the injury "for fear that honest efforts to work will destroy eligibility for benefits." 10A Couch on Insurance § 146:22 (3d ed.1995). The alternative also creates perverse incentives for employers and insurers to encourage an employee to attempt to work until the designated time period in the policy has lapsed.

 Plaintiff has raised a genuine issue of material fact regarding whether she was totally disabled from the date of the accident or within six months thereafter under the process of nature rule. Plaintiff has submitted evidence that she suffered immediate disabling injury from the accident, that she returned to work though still suffering pain from the injuries, and that she was continuously treated for her back pain through the time she left work in April 2001. For example, Plaintiff has presented a letter from Dr. Mark B. Kabins ("Dr.Kabins") dated February 21, 2001, stating Plaintiff suffered from probable internal disc disruption, that she was asymptomatic prior to the December 1999 car accident, that she has failed conservative treatment, and may have to undergo surgery. (Pl.'s Opp'n to Mot. for Summ. J., Ex. 1 at COLCR00317.) In a follow-up examination in March 2001, Dr. Kabins recommended surgery and prescribed Lortab for pain control. (*Id.* at COLCR00323.)

Plaintiff also has submitted an independent medical evaluation dated April 17, 2001, just days after she ceased working at

the Sahara. (*Id.* at COLCR00334–36.) That report, prepared by Dr. Patrick S. McNulty ("Dr.McNulty"), stated Plaintiff has suffered back pain since the December 1999 accident, "which she has found to be progressively more disabling as time has gone on, especially over the last six months." (*Id.* at COLCR00334.) Dr. McNulty stated surgery for pain management was indicated, and "[i]t is my opinion that the patient's current pathology possibly requiring the reconstruction is due to the motor vehicle accident due to the fact that the patient did not relate any significant problems prior to this." (*Id.* at COLCR00335.) Based on such evidence, which Plaintiff presented to Defendants during the claims process, a reasonable jury could find Plaintiff was injured in the December 1999 accident, that she was able to return to work despite continuing to suffer pain from the accident, and that her pain worsened over the next year and a half despite treatment, ultimately resulting in Plaintiff's total disability in April 2001. Accordingly, a reasonable jury could find Plaintiff's the December 1999 accident caused Plaintiff's total disability under the process of nature rule. Plaintiff presented this evidence and alerted Defendants to the potential applicability of the process of nature rule. The Court therefore will deny Defendants' motion for summary judgment on Plaintiff's breach of contract claim.

### B. Bad Faith and Statutory Duties

 "An insurer fails to act in good faith when it refuses 'without proper cause' to compensate the insured for a loss covered by the policy." *Pemberton v. Farmers Ins. Exch.*, 109 Nev. 789, 858 P.2d 380, 382 (1993) (quoting *United States Fid. & Guar. Co. v. Peterson*, 91 Nev. 617, 540 P.2d 1070, 1071 (1975)). Such conduct is a breach of the covenant of good faith and fair dealing, and constitutes bad faith. *Id.*

"To establish a prima facie case of bad-faith refusal to pay an insurance claim, the plaintiff must establish that the insurer had no reasonable basis for disputing coverage, and that the insurer knew or recklessly disregarded the fact that there was no reasonable basis for disputing coverage." *Powers v. United Servs. Auto. Ass'n*, 114 Nev. 690, 962 P.2d 596, 604 (1998). To recover punitive damages on a bad faith claim, the plaintiff must show "oppression, fraud, or malice, express or implied." *United Fire Ins. Co. v. McClelland*, 105 Nev. 504, 780 P.2d 193, 198 (1989) (quoting Nev.Rev.Stat. 42.010 (now Nev.Rev.Stat. 42.005)).

In addition to the duty of good faith and fair dealing, an insurance company in Nevada has certain statutory duties with which it must comply. *See* Nev.Rev.Stat. 686A.310. Failure to adhere to a statutory mandate constitutes an unfair practice. *Id.* Under Nevada law, it is an unfair practice for an insurance company to engage in any of the following:

(a) Misrepresenting to insureds or claimants pertinent facts or insurance policy provisions relating to any coverage at issue.

(b) Failing to acknowledge and act reasonably promptly upon communications with respect to claims arising under insurance policies.

(c) Failing to adopt and implement reasonable standards for the prompt investigation and processing of claims arising under insurance policies.

(d) Failing to affirm or deny coverage of claims within a reasonable time after proof of loss requirements have been completed and submitted by the insured.

(e) Failing to effectuate prompt, fair and equitable settlements of claims in which liability of the insurer has become reasonably clear.

(f) Compelling insureds to institute litigation to recover amounts due under an insurance policy by offering substantially less than the amounts ultimately recovered in actions brought by such insureds, when the insureds have made claims for amounts reasonably similar to the amounts ultimately recovered.

(g) Attempting to settle a claim by an insured for less than the amount to which a reasonable person would have believed he was entitled by reference to written or printed advertising material accompanying or made part of an application.

(h) Attempting to settle claims on the basis of an application which was altered without notice to, or knowledge or consent of, the insured, his representative, agent or broker.

Nev.Rev.Stat. 686A.310(a)-(h).

▮ With respect to Plaintiff's bad faith claim, Plaintiff has failed to raise a genuine issue of material fact that Defendants had no reasonable basis for disputing coverage and that Defendants knew or recklessly disregarded the fact that there was no reasonable basis for disputing the claim. Plaintiff did not raise the possibility that she was disabled upon leaving her job as a security officer until her deposition in this case. Defendants thus had a reasonable basis to deny coverage from January 2000 to April 2001. Further, after April 2001, Plaintiff's recurrent disability was more than six months after the accident. The policy's plain terms did not cover recurrent disability over six months from the original accident. Denial therefore was not unreasonable. It is only through the application of the process of nature rule that Plaintiff could show coverage. Because Nevada has not adopted the rule expressly, Defendants' denial of coverage even when notified about the rule's potential application was not unreasonable.

Plaintiff also has not raised a genuine issue of material fact that Defendants acted with oppression, fraud, or malice to support a punitive damage award. The Court therefore will grant Defendants' motion for summary judgment on Plaintiff's bad faith claim and request for punitive damages.

With respect to Plaintiff's statutory claims, Plaintiff makes no argument and cites to no evidence in the record creating a genuine issue of material fact on any of the alleged statutory violations. The Court therefore will grant Defendants' motion for summary judgment on the statutory claims. *Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1028–31 (9th Cir.2001) (noting a district court need not comb the record looking for a genuine issue of material fact where the party has not brought the evidence to the court's attention).

## IV. CONCLUSION

IT IS THEREFORE ORDERED that Defendants UnumProvident Corporation and Colonial Life and Accident Insurance Company's Motion for Summary Judgment (Doc. # 31) is hereby GRANTED in part and DENIED in part. The motion is granted with respect to Plaintiff's claims for bad faith, violation of statutory duties, and punitive damages. The motion is denied with respect to Plaintiff's breach of contract claim.

IT IS FURTHER ORDERED that the parties shall have thirty (30) days from the date of this Order to file a joint pre-trial order.